IN THE

# SUPREME COURT OF APPEALS

OF

# VIRGINIA.

## Richmond.

### COLEMAN V. COMMONWEALTH.

NOVEMBER 17th, 1887.

Absent, Hinton, J.

1. CRIMINAL PROCEEDINGS—*Jury—Judge's list.*—Writ of *venire facias* commands sheriff to summon twenty-four persons from list to be furnished by county judge, and to have "there this writ and the *judge's list* of said jurors," is followed in the record by "the list of *venire* referred to above, and signed, "W. S. Gooch," and is endorsed, "Executed by summoning the within-mentioned parties," and signed by the sheriff.

HELD:

 The record conclusively shows that the persons were summoned from a list furnished and signed by the county judge.

2. IDEM—*Colored persons.*—The county court overruling motion to quash said writ because jury was composed of colored men, assigned as a reason that the prisoner and prosecutrix were colored, and that the jury was composed of intelligent colored men qualified as jurors.

HELD:

 This is not proof that the court *intentionally* summoned those persons *because* they were colored, and the motion was properly overruled.

3. IDEM—*Evidence of chastity.*—At trial for rape it having been proved, without objection, that daughter of prosecutrix living with her, had an ille-

VOL. LXXXIV—1

gitimate child, it was held that was such attack upon the character of prosecutrix for chastity as admitted evidence of her general character.
4. IDEM—*Quære.*—Can character of prosecutrix for chastity in the trial for rape, be supported by evidence, unless it has been previously attacked?
5. IDEM—*Case at bar.*—The evidence, not the facts, being certified, and this court looking only to the evidence for the Commonwealth, the verdict of guilty is not such a palpable deviation from said evidence as ought to cause this court to set aside said verdict.

Error to judgment of circuit court of Louisa county, refusing writ of error to judgment of county court of said county, rendered 16th April, 1887, against Burton Coleman upon an indictment for rape, and sentencing him, in accordance with the verdict, to imprisonment in the penitentiary for the term of ten years. Opinion states the cases. To this judgment a writ of error was awarded by one of the judges of this court.

*Wilmer Sims, R. L. Gordon,* and *Alex. Coke,* for plaintiff in error.

*Attorney-General R. A. Ayers,* and *Edmund Pendleton, Jr.,* for the Commonwealth.

LEWIS, P., delivered the opinion of the court.

The first question in the case relates to the action of the county court in overruling the prisoner's motion to quash the writ of *venire facias.* The motion was based on two grounds: 1. For errors apparent on the face of the writ; and 2. Because, as alleged, all of the twenty-four persons whose names appeared upon the list attached to the writ were colored men, and that the judge had intentionally summoned colored men for the trial of the case.

In support of the first ground, it is contended, that the list furnished to the sheriff, and attached to the writ, is simply signed " W. S. Gooch," without anything to indicate his official rank, so that it does not appear that the W. S. Gooch,

whose signature is on the list, is the judge of the county court
of Louisa county, and *non constat* that he is. This position,
however, is not supported by the record. The writ is in the
usual form, commanding the sheriff to summon twenty-four
persons, residing in the said county remote from the place
where the alleged felony was committed, and qualified in other
respects to serve as jurors, to be summoned from a list to be
furnished by the judge of the said county, and to appear on a
given day for the trial of the accused, etc. And it then con-
cludes with the command that the sheriff "have there this
writ and *the judge's list* of said jurors." Then follows in the
record what is stated to be the "list of *venire* referred to above,"
which is as follows: "Commonwealth v. Barton Coleman,
April 15, 1887; Mercer Johnson," and twenty-three others,
whose names are written in the list, to which is attached the
signature of W. S. Gooch, above mentioned, and upon the
book of which is the official return of the sheriff as follows:
"Executed by summoning the within mentioned parties, April
15, 1887." This conclusively shows that the jurors were sum-
moned from a list furnished and signed by the Honorable W.
S. Gooch, county court judge, and, therefore, that the first
ground of objection is untenable.

And the second is equally so. For conceding that the effect
of the recent amendments to the constitution of the United
States and the acts of Congress passed to enforce those amend-
ments, as they have been construed by the Federal courts, is
to give to every citizen, charged with crime, the right to be
tried by a jury selected without regard to color, the concession
does not at all affect the case. The allegation that the judge
"intentionally summoned colored men," is wholly unsupported
by proof of any sort, and is sought to be maintained here solely
upon the ground that in overruling the motion to quash the
writ of *venire facias*, the court assigned, as a reason for its
action, the fact that both the prisoner and the prosecutrix were
colored. The further reason, it is proper to say, was also given

that the *venire* was composed of intelligent colored men, qualified, in the opinion of the court, to serve as jurors.

Now, it needs no argument to show, that the reason unnecessarily assigned by the court for its *refusal to quash* the writ, after the motion was made, cannot be accepted as proof that the same reason originally controlled the judge in directing the particular jurors to be summoned. Indeed, there is nothing to show that he knew the color of the prisoner or the prosecutrix until after the motion to quash the writ had been made. And if the fact were established that he "intentionally summoned" colored men, the result would be the same; for every juror may be said to be intentionally summoned, and no reason is perceived why a colored man, any more or less than a white man, may not be summoned to serve as a juror because of his supposed qualifications for such service, and *not because of his color*. Nor after being lawfully selected and summoned, can the fact that the court refuses to discharge him, no matter for what reason, retrospectively affect the validity of the action of the judge in directing him to be summoned. The motion to quash the writ was, therefore, rightly overruled.

The next question is, whether or not the county court erred in admitting evidence to prove the general reputation of the prosecutrix for chastity. And in this connection, the question has been argued, whether such evidence is admissible before the character of the prosecutrix has been attacked. The general rule undoubtedly is that evidence to sustain a witness, whose character or credibility has not been attacked by the opposite party, is not admissible, the character being no part of the *res gestae*. It is contended, however, by the attorney-general that there is an exception to this rule in cases of rape or assault with intent to commit rape. In such cases, he says, the general character of the prosecutrix for chastity being involved, it may be sustained, whether attacked or not.

Upon this precise point the authorities are few, and they are not agreed. In *State* v. *De Wolf*, 8 Conn., 93, evidence to

prove the general character of the prosecutrix for truth to be good, though not impeached, was admitted by the trial court, and it was said by the appellate court that it would not be going too far, perhaps, to say that the general character of the witness, who is the victim of the outrage, in prosecutions for rape may always be shown. The case, however, was disposed of on other grounds, and the point was not decided.

In *Thomey* v. *State*, 8 S. and M., 104, decided in 1847, Thacker, J., from whose opinion upon this point there seems to have been no dissent, said: "The party ravished is a competent witness to prove the fact, but the credibility of her testimony must be left to the jury. It is legitimate to support her credibility by evidence of her good fame, or to attack it by evidence of her evil fame." "Such evidence," he added, "tends to show, that the connection with the woman was had against or with her consent." This was all that was said upon the point, and no reference was made to the case of *People* v. *Hulse*, presently to be mentioned. The only authority referred to is 4 Bl. Comm., 213, where the author, adopting the language of Sir Matthew Hale in his Pleas of the Crown, as do most of the text-writers on the subject, said: "The party ravished may give evidence upon oath, and is in law a competent witness; but the credibility of her testimony, and how far forth she is to be believed, must be left to the jury upon the circumstances of fact that concur in that testimony. For instance, if the witness be of good fame; if she presently discovered the offence, and made search for the offender; if the party accused fled for it: these and the like are concurring circumstances which give greater probability to her evidence." See also, East. P. C., 445; 1 Russ. on Crimes, 562; 2 Whart. Crim. Law (7th ed.,) sec. 1149; 3 Greenl. Ev., sec. 212.

On the other hand, in *People* v. *Hulse*, 3 Hill, 309, decided in 1842, the supreme court of New York, composed of Nelson, C. J., and Bronson and Cowen, JJ., in an able opinion, declared that there was no authority for making the case of a

witness swearing to a rape an exception to the general rule of evidence in relation to proof of character, and that as a question of principle no such exception should be made. Such evidence, it was thought, is calculated to draw off the attention of the jury from the true point in controversy, and to cause them to find a verdict of guilty more upon the good character of the prosecutrix, than upon a rational conviction of the defendant's guilt. And referring to the language of Lord Hale, above mentioned, it was denied that that judge meant to say that the good character of the prosecutrix may be shown before any question of character or "good fame" has been raised by the defence. "No one," it was said, "can read what Lord Hale has said in relation to prosecutions of this kind, without being satisfied, that greatly as he abhored the crime of rape, he was very far from thinking that any unusual weight should be thrown into the scale against the accused. On the contrary, he regarded it as a case calling for unusual caution on the part of the judge and the jury, and where the testimony of the complaining witness should be received with more than ordinary doubt and suspicion." And the language of Lord Hale, also referred to by Blackstone, was quoted at length to sustain this conclusion.

This view of the law, which we consider the true one, is adopted by a philosophical writer, who, in treating of the evidence in a prosecution for rape, says that there are cases, perhaps exceptional in their circumstances, wherein sustaining evidence of the good character of the prosecutrix has been received when she was not attacked, but that the general and better doctrine admits it only to repel an attack. And he cites the cases above mentioned, which are the only ones to which our attention has been called. 2 Bish. Crim. Proc., sec. 964.

We are of opinion, however, that the evidence in question was admissible upon the second ground contended for by counsel for the State—namely, to repel an attack upon the character of the prosecutrix. It is true the motion to exclude the evi-

dence was rested on the alleged fact that her character had not been attacked; but the motion was, in general terms, overruled, and there is nothing in the bill of exceptions to show that the alleged fact existed.    The presumption therefore is, that it did not; for the rule requires everything to be presumed in favor of the correctness of the rulings of a court of competent jurisdiction when brought under review in an appellate court, until the contrary is shown.   Applying this rule in a recent case, Judge Burks, speaking for the court, said: " When exception is taken to the admission or exclusion of evidence, or the granting or refusing of instructions, or indeed to any other ruling of the court at the trial, the bill should be so framed by the insertion of proper matter as to make the error, if any complained of, apparent—otherwise the exception will generally be unavailing." *Harman* v. *City of Lynchburg*, 33 Gratt., 37.      See also *Womack* v. *Tankersley*, 78 Va., 242; *Wright* v. *Smith*, 81 Id., 777.

But apart from this, the fair inference from the affirmative statements of the record is, that the character of the prosecutrix had been attacked before the evidence objected to was offered, and that the evidence was offered to repel that attack. It appears that it was brought out in her examination, presumably on her cross-examination, that she had a daughter living with her who had given birth to an illegitimate child, and the object of this evidence manifestly was to indirectly attack her character for chastity, and thus to weaken, if not destroy, her testimony before the jury.    It is true the evidence may have been inadmissible, and if objected to—as to which the record is silent—ought to have been excluded.   Nevertheless, it was admitted, and having been admitted, it was proper to allow the prosecution to show, in reply, that the character of the prosecutrix was good.

The only remaining question relates to the action of the county court in overruling the motion of the prisoner for a new trial on the ground that the verdict was contrary to the law and the evidence.   The evidence is certified, and not the

facts, so that we can look to the evidence for the common-wealth only. Numerous witnesses were examined, and to review the evidence would unduly extend this opinion, without subserving any useful purpose. It is sufficient to say we have examined it carefully. There is no question as to the *corpus delicti*, and we are satisfied from the evidence that the crime was committed by the prisoner. The question of his guilt or innocence, depending, as it did, upon the tendency and weight of the evidence, was determined by the jury, whom the law has appointed the triers, and the judge who presided at the trial, and who, like the jury, saw and heard the witnesses, approved the verdict. It is only when there has been a palpable deviation from the evidence, that a verdict fairly rendered ought to be set aside, and especially in an appellate court. The decisions of this court on the subject are very numerous, and too familiar to require citation. See, however, *Hill's case*, 2 Gratt., 594; *Read's case* 22 Id., 924; *Taylor's case*, 77 Va., 692; *Finchin's case* 83 Va., 689. In the light of the principles established by these decisions, we are of opinion that the county court did not err in overruling the motion for a new trial, and that the judgment complained of must be affirmed.

JUDGMENT AFFIRMED.