COURT OF APPEALS OF VIRGINIA

Present:   Judges Clements, Kelsey and Beales
Argued at Richmond, Virginia

CHARLES CAPRINO

                                                        OPINION BY
v.        Record No. 2272-07-4                  JUDGE D. ARTHUR KELSEY
                                                        DECEMBER 23, 2008

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David T. Stitt, Judge

Joseph A. Sadighian (Joseph R. Winston; Office of the
Appellate Defender, on briefs), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General; Karri B. Atwood, Assistant
Attorney General, on brief), for appellee.


A jury convicted Charles Caprino of second-degree murder, attempted malicious

wounding, and felonious use of a firearm.  Caprino took the stand at trial and claimed he acted in

self-defense.  Over Caprino's objection, the prosecutor called a detective as a rebuttal witness to

impeach Caprino's testimony as a recent fabrication presented for the first time from the witness

stand.  On appeal, Caprino argues his convictions should be overturned because the trial court

violated his constitutional right to remain silent by permitting the detective's testimony.  We

disagree and affirm Caprino's convictions.

I.

The evidence at trial described an aborted drug sale that ended in gunfire.  The seller,

Caprino, shot a handgun several times into a vehicle killing one man and grazing another.  He

fired the shots in self-defense, Caprino testified, because one of the two victims pointed a

sawed-off shotgun at him.  Investigating officers never recovered a shotgun from either of the

two victims, from the crime scene, or from Caprino.

On rebuttal, the prosecutor called a detective to the stand as a rebuttal witness to impeach Caprino's self-defense claim as a recent fabrication. The prosecutor asked the detective if he interviewed Caprino. "I had a chance to interview Mr. Caprino," the detective answered, "and he declined to speak with me." Caprino's counsel objected, arguing "[i]t brings all sorts of inferences to the jury that perhaps he should have. We haven't talked about a Fifth Amendment clause . . . ." The prosecutor replied, "It's not a comment on his exercise of Constitutional rights. That's why I didn't get into advising him of <u>Miranda</u> rights. I just . . . want the jury to know that this Defendant never talked to a detective." "In other words," the prosecutor stated, "the point that is made, Your Honor, is that the story that the jury heard is the first time [Caprino has] told this to anybody" except his counsel.

The trial court overruled Caprino's objection. Immediately thereafter, Caprino's counsel advised the court: "I have no cross, Your Honor."

In closing arguments, the prosecutor stated to the jury that the detective "never interviewed" Caprino. "What you heard yesterday on the stand was the first time, absent his attorneys and that's his privilege — the first time anybody has heard Max Caprino's version of what happened," the prosecutor argued. Caprino "has had a lot of time to think about what the right answers are," the prosecutor continued, "what the right explanation is, what might satisfy you in believing that he is not guilty of these crimes." Caprino's counsel did not object to this argument, move for a mistrial, or request any cautionary instruction.

In his closing argument, Caprino's counsel reasserted his client's testimony that he fired into the vehicle in self-defense. He conceded the shotgun was never found but argued the surviving victim, despite his denials, must have taken the shotgun from the scene of the crime and hidden it from the authorities. The jury, however, rejected this explanation and found Caprino guilty. Caprino now appeals his convictions.

II.

We begin with an important point of clarification:  "Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts."  Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977).  Today, as a century ago, "nothing is better settled than that everything is to be presumed in favor of the correctness of the rulings of a court of competent jurisdiction, when brought under review in an appellate tribunal, until the contrary is shown."  Early v. Commonwealth, 86 Va. 921, 925, 11 S.E. 795, 797 (1890) (citing Coleman v. Commonwealth, 84 Va. 1, 7, 3 S.E. 878, 881 (1887)).

From that starting premise, we take up the question presented by Caprino's appeal:  "Whether the prosecutor should have been permitted to show that Mr. Caprino had declined to make a statement to the police where he had been advised of his right to counsel."  Appellant's Br. at 2.  We answer this question by finding fault with the assumption underlying it.

Caprino relies on Doyle v. Ohio, 426 U.S. 610 (1976), which held the use for impeachment purposes of a defendant's silence "at the time of arrest and after receiving Miranda warnings" violates the Due Process Clause of the Fourteenth Amendment.  Brecht v. Abrahamson, 507 U.S. 619, 628 (1993) (quoting Doyle, 426 U.S. at 619).  The Doyle analysis "rests on the Due Process Clause, not the Fifth Amendment."  Wainwright v. Greenfield, 474 U.S. 284, 293 n.10 (1986).[1]  "After an arrested person is formally advised by an officer of the law that he has a right to remain silent," Doyle explained, "the unfairness occurs when the

---

[1] Caprino relies on both the Federal and Virginia Constitutions.  "Because the due process protections afforded under the Constitution of Virginia are co-extensive with those of the federal constitution, the same analysis will apply to both."  Shivaee v. Commonwealth, 270 Va. 112, 119, 613 S.E.2d 570, 574 (2005).  "Our courts have consistently held that the protections afforded under the Virginia Constitution are co-extensive with those in the United States Constitution."  Slayton v. Commonwealth, 41 Va. App. 101, 109-10 n.2, 582 S.E.2d 448, 452 n.2 (2003) (citation omitted); see also Craddock v. Commonwealth, 40 Va. App. 539, 552 n.2, 580 S.E.2d 454, 461 n.2 (2003).

prosecution, in the presence of the jury, is allowed to undertake impeachment on the basis of what may be the exercise of that right." Doyle, 426 U.S. at 619 n.10; see, e.g., Schrum v. Commonwealth, 219 Va. 204, 209, 246 S.E.2d 893, 897 (1978) (applying Doyle where a defendant's Miranda rights were "read to him" and he executed a "rights waiver").

On the other hand, "the Constitution does not prohibit the use for impeachment purposes of a defendant's silence prior to arrest, Jenkins v. Anderson, 447 U.S. 231, 239 (1980), or after arrest if no Miranda warnings are given, Fletcher v. Weir, 455 U.S. 603, 606-07 (1982) (*per curiam*)." Brecht, 507 U.S. at 628. "In the absence of the sort of affirmative assurances embodied in the Miranda warnings," no due process violation occurs when the prosecution cross-examines "as to postarrest silence when a defendant chooses to take the stand." Fletcher, 455 U.S. at 607.[2]

Controlling precedent has "consistently explained Doyle as a case where the government had induced silence by implicitly assuring the defendant that his silence would not be used against him." Portuondo v. Agard, 529 U.S. 61, 74 (2000) (quoting Fletcher, 455 U.S. at 606); see also Wainwright, 474 U.S. at 290. Receiving Miranda warnings from a law enforcement officer serves as a "prerequisite of a Doyle violation," Greer v. Miller, 483 U.S. 756, 763 (1987), and absent this predicate showing, post-arrest "silence is probative and does not rest on any implied assurance by law enforcement authorities that it will carry no penalty," Brecht, 507 U.S. at 628 (citing Jenkins, 447 U.S. at 239). In short, Doyle applies only when the defendant maintains his silence "after receipt of *governmental* assurances." Anderson v. Charles, 447 U.S. 404, 408 (1980) (emphasis added).

---

[2] Doyle does not bar the prosecution from using even post-Miranda silence to impeach a defendant who "testifies to an exculpatory version of events and claims to have told the police the same version upon arrest." Doyle, 426 U.S. at 619 n.11. Likewise, "Doyle does not apply to cross-examination that merely inquires into prior inconsistent statements." Anderson v. Charles, 447 U.S. 404, 408 (1980).

- 4 -

In this case, Caprino concedes the trial court record does not "contain any direct testimony" that police officers ever administered <u>Miranda</u> warnings to Caprino. <u>See</u> Appellant's Br. at 8. For reasons not discernable from the record, Caprino's counsel chose not to cross-examine the detective on the <u>Miranda</u> issue, to proffer that the detective gave Caprino any <u>Miranda</u> warnings, or to put Caprino back on the stand in surrebutal to claim that he had in fact received <u>Miranda</u> warnings — all options available to him had he wished to pursue the <u>Doyle</u> objection.

The absence of any evidence demonstrating that Caprino's silence was in response to any <u>Miranda</u> warnings he received precludes the application of the <u>Doyle</u> due process doctrine. As the United States Supreme Court has explained:

> The significant difference between the present case and <u>Doyle</u> is that *the record does not indicate that respondent Weir received any <u>Miranda</u> warnings during the period in which he remained silent immediately after his arrest.* The majority of the Court of Appeals recognized the difference, but sought to extend <u>Doyle</u> to cover Weir's situation by stating that "[w]e think an arrest, by itself, is governmental action which implicitly induces a defendant to remain silent." 658 F.2d at 1131. We think that this broadening of <u>Doyle</u> is unsupported by the reasoning of that case and contrary to our post-<u>Doyle</u> decisions.

<u>Fletcher</u>, 455 U.S. at 605-06 (emphasis added); <u>see</u> <u>Folston v. Allsbrook</u>, 691 F.2d 184, 187 (4th Cir. 1982) (holding "<u>Doyle</u> is inapplicable when the record does not indicate that the defendant 'received any <u>Miranda</u> warnings during the period in which he remained silent immediately after his arrest'" (citing <u>Fletcher</u>, 455 U.S. at 605)).[3]

---

[3] <u>Accord</u> <u>United States v. O'Keefe</u>, 461 F.3d 1338, 1347 (11th Cir. 2006); <u>Weir v. Wilson</u>, 744 F.2d 532, 535 (6th Cir. 1984); <u>Woods v. Kuhlmann</u>, 677 F. Supp. 1302, 1308 (S.D. N.Y. 1988); <u>Powell v. State</u>, 424 S.E.2d 333, 335 (Ga. Ct. App. 1992); <u>State v. Carter</u>, 57 P.3d 825, 828 (Kan. Ct. App. 2002); <u>State v. Bell</u>, 554 S.E.2d 435, 437 (S.C. Ct. App. 2001). <u>Cf.</u> <u>Taylor v. Commonwealth</u>, 17 Va. App. 271, 274 n.2, 437 S.E.2d 202, 204 n.2 (1993) (noting, without explanation, that a <u>Doyle</u> objection to a prosecutor's question, "[I]s this the first time that you've ever told this story to anybody?" would "fail on the merits" under the reasoning of <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993), and <u>Fletcher v. Weir</u>, 455 U.S. 603 (1982)).

III.

In short, the due process principles adopted in <u>Doyle</u> do not apply here because the record does not show that Caprino's silence was in response to any <u>Miranda</u> warnings he received.  We thus affirm Caprino's convictions for second-degree murder, attempted malicious wounding, and felonious use of a firearm.

<u>Affirmed.</u>