NOT DESIGNATED FOR PUBLICATION

No. 125,988

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRET LEE FALLIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Submitted without oral argument. Opinion filed May 10, 2024. Appeal dismissed.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellant.

*Carissa Brinker*, assistant county attorney, *Marc Goodman*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., GARDNER and ISHERWOOD, JJ.

PER CURIAM: Bret Lee Fallis appeals his conviction for driving under the influence of alcohol (DUI), arguing the State's prosecutor erred by improperly presenting evidence at trial of his post-*Miranda* silence, violating the principles in *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). He also claims that the district court improperly admitted testimony from a State's witness who commented on his credibility, without admonishing the jury to disregard the statement. But Fallis did not object to these allegedly erroneous admissions of evidence at trial, so we must dismiss his claims as unpreserved.

*Factual and Procedural Background*

In July 2020, Fallis was trimming trees at a house near Emporia with the use of a rented bucket truck. Fallis left work around 5 p.m. to return the 65-foot bucket truck, pulling it on a trailer behind his pickup truck. Fallis had driven the same route while pulling the bucket truck four or five times before, but on this day Fallis wrecked before he could return the equipment. According to Fallis, he braked too hard when he saw a speed limit sign, which caused the trailer to push his truck off the road. Fallis' truck and the bucket truck slid across the road and into the ditch on the other side of the highway, facing the opposite direction that Fallis had been traveling, and turned over on their sides.

Officer Nathan Rankin arrived at the scene of the accident at around 7:46 p.m. He observed the scene of the accident but did not see any apparent cause for the wreck, such as major defects with Fallis' vehicle, blown tires, or debris in the roadway.

Rankin spoke to Fallis, who was then sitting in an ambulance. During their initial interaction, Rankin noted that Fallis had no apparent injuries but he did have a strong smell of alcohol coming from him. They talked briefly but Fallis indicated that he did not want to provide much information. After emergency medical services (EMS) finished treating Fallis, Rankin put him in his patrol car for "safety purposes." At some point, Rankin arrested Fallis based on an unrelated search warrant issued by the Osage County Sheriff's Office.

Trooper Daniel Delgadillo also responded to the accident and, upon arriving, took over the investigation. Fallis was then seated in Rankin's patrol car. Like Rankin, Delgadillo saw that Fallis' truck and trailer had skidded across the lanes on the highway. Although Fallis was originally traveling southbound, his truck and trailer slid sideways and eventually came to rest on their sides in the northbound ditch. Delgadillo added that

2

nothing on the roadway and no adverse weather or other conditions explained the accident.

Delgadillo spoke with Fallis in Rankin's patrol car, immediately noticed a strong smell of alcohol, and saw that Fallis had bloodshot eyes. This signaled to Delgadillo that Fallis was possibly impaired. Fallis told Delgadillo that he had nothing to drink before driving and did not know what had caused the accident but said that "the weight of the trailer caused him to come back across the roadway and crash." Yet Fallis' explanation did not give Delgadillo the specific reason for the wreck, so Delgadillo transitioned his investigation to a DUI investigation.

Delgadillo then asked Fallis to perform standard field sobriety tests, but Fallis refused. Fallis had also refused additional medical care; but as Delgadillo finished diagraming the accident, Fallis asked to be transported to the hospital. Delgadillo requested an ambulance, since the first one had left, and after it arrived, he followed Fallis to the hospital to continue his investigation.

At the hospital, Delgadillo asked Fallis to submit a blood test, but Fallis refused. Delgadillo then got a search warrant for a sample, which hospital staff took at 10:45 p.m. Later testing of that sample by the Kansas Bureau of Investigation (KBI) showed that Fallis had 0.12 grams of ethyl alcohol per 100 milliliters of blood—over the legal limit of 0.08.

The State charged Fallis with DUI of drugs or alcohol, a third offense in 10 years under K.S.A. 8-1567(a)(5), (b)(1)(D). The State also charged Fallis with alternative counts under K.S.A. 8-1567(a)(1), (b)(1)(D) and K.S.A. 8-1567(a)(2), (b)(1)(D). Following a preliminary hearing, the district court bound Fallis over on the first count and both alternative counts.

3

*Trial*

The State's evidence included Rankin and Delgadillo and other persons involved in taking and testing Fallis' blood sample. The State also admitted several pictures of the accident, the blood draw kit used on Fallis, and KBI's laboratory results.

Fallis testified in his defense. He explained that two months before the accident, he had fallen out of a tree and his resulting injuries required him to wear a "turtle suit"—a thick plastic brace around his chest and back. He was wearing the suit during the crash.

Fallis denied drinking any alcohol before his accident. The wreck happened because he had tried to slow down too quickly, causing the trailer to push his truck off the road around 5:45 p.m., more than two hours before police or EMS arrived at the scene. Fallis managed to exit his truck without help but people gathered to witness the aftermath, making it "like a zoo." Someone asked if he was hurt and called an ambulance.

Fallis did not deny his intoxication, but he claimed it happened after his accident. After the accident, a stranger asked if he was in pain and Fallis responded that he was and although he had a prescription for pain medication, he did not have them with him. The man then asked Fallis if he wanted some alcohol to ease his pain. The man returned to his car to retrieve a bottle, gave Fallis a fresh bottle of what he believed was Southern Comfort, and Fallis took two "decent size gulps" from it. Although he was unsure, Fallis estimated that he drank "[m]aybe [an] inch and a half, two inches out of the top of it."

After drinking the alcohol, he waited "an hour or so at least, a couple hours, maybe" for law enforcement to arrive because he did not want to be charged with leaving the scene of an accident. Fallis did not remember talking to Rankin and believed that he spoke with Delgadillo for "maybe 15 seconds." Fallis admitted that he may have told

4

Delgadillo that he drank nothing before the accident, but Delgadillo never asked if Fallis had drunk anything after the accident. Had he asked, Fallis would have told him the truth.

The jury found Fallis guilty of DUI under the first count and the first alternative count. Based on this verdict, the district court found Fallis guilty of DUI under K.S.A. 8-1567 (a)(5), (b)(1)(A).

Fallis timely appeals.

*Did the State's Prosecutor Err by Admitting Evidence of Fallis' Postarrest Silence?*

Fallis first argues that the State committed prosecutorial error by presenting evidence of his postarrest silence during its direct examination of Delgadillo.

During the State's direct examination of Delgadillo, the prosecutor asked whether "[i]n addition to the odor of alcohol, was there anything else that [Delgadillo] noted" when speaking with Fallis after the accident. Delgadillo responded that he noticed Fallis had blood shot eyes and that Fallis "didn't communicate very much; in other words, he didn't say much" when asked questions. The prosecutor later continued that line of questioning:

> "[Prosecutor:] And you also indicated, in addition to those physical, impairment clues that you were noting, you indicated he was not willing to communicate very much with you; is that correct?
> "[Delgadillo:] Correct. He was just giving me short answers.
> "[Prosecutor:] And, so, was the fact that he was giving you short answers significant to you in any way?
> "[Delgadillo:] Yes.
> "[Prosecutor:] Why so?

"[Delgadillo:] Uh, normally, people are wanting to communicate, wanting to explain themselves to me as far as what happened and what they were doing. In my experience, somebody's who's consumed alcohol, they don't want to open their mouth as much because they give off that odor and they know that.

"[Prosecutor:] So, did you have an opportunity to attempt to talk to Mr. Fallis about the accident?

"[Delgadillo:] Yes.

"[Prosecutor:] And did you have an opportunity to ask him whether he had drank anything that evening?

"[Delgadillo:] Yes.

"[Prosecutor:] What was his response to you when you asked whether he had drank anything?

"[Delgadillo:] He said he had no alcohol to drink."

Fallis claims that this questioning violated the principles set forth in *Doyle*, prohibiting use of a defendant's post-*Miranda* invocation of their right to silence against them at trial. The United States Supreme Court held that a state prosecutor may not

"seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving *Miranda* warnings at the time of his arrest. . . . [T]he use of the defendant's post-arrest silence in this manner violates due process." *Doyle*, 426 U.S. at 611.

Fallis concedes that he did not receive *Miranda* warnings but argues that he was under arrest when Delgadillo spoke to him after the accident, so *Doyle* still applies.

*Preservation*

Before reaching the merits of this issue, we must address a procedural matter raised by the State. Fallis did not object to the prosecutor's alleged error in the district court. Fallis acknowledges his failure to preserve his claim for appellate review but

6

argues that two exceptions to the general rule precluding unpreserved claims apply here. Fallis asserts that the panel must consider the issue to protect a fundamental right—the right to remain silent after an arrest. See *State v. Hillard*, 313 Kan. 830, 839-40, 491 P.3d 1223 (2021) (citing *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 [2010]). And citing *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015), Fallis also argues that this issue raises a question of law arising from proved or admitted facts.

The State argues that under K.S.A. 60-404 and *State v. Fisher*, 222 Kan. 76, 83-84, 563 P.2d 1012 (1977), Fallis' claim must be dismissed as unpreserved. K.S.A. 60-404 provides that "[a] verdict . . . shall not be set aside . . . by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." And in *Fisher*, our Supreme Court held that an argument based on *Doyle* is unpreserved if the defendant fails to make a timely and specific objection at trial. *Fisher*, 222 Kan. at 83-84; see also *State v. King*, 288 Kan. 333, 349-50, 204 P.3d 585 (2009) (emphasizing importance of strictly applying K.S.A. 60-404's contemporaneous objection requirement when dismissing similar prosecutorial error claim under *Doyle*); *State v. Carter*, 30 Kan. App. 2d 1247, 1249, 57 P.3d 825 (2002) (dismissing this "argument [as] unavailing as Kansas law has made it clear that a question or comment challenged under *Doyle* requires a timely and specific objection to preserve the issue for appeal").

The State also argues that the exceptions to the general preservation rules which Fallis relies on do not apply. Alternatively, on the merits, the State claims the *Doyle* does not apply under these circumstances because according to *Fletcher v. Weir*, 455 U.S. 603, 607, 102 S. Ct. 1309, 71 L. Ed. 2d 490 (1982), a defendant's postarrest but pre-*Miranda* silence may be used against the defendant at trial. The State similarly references this court's opinion in *Carter*, 30 Kan. App. 2d at 1249-51, and argues that *Doyle* protections never attached because Fallis never received *Miranda* warnings. The State also argues that any error was harmless.

As detailed below, we agree with the State that Fallis' claim is not preserved and thus dismiss the issue.

*Fallis' claim is unpreserved.*

This court may generally review a claim of prosecutorial error without a timely objection. *State v. Shields*, 315 Kan. 814, 835, 511 P.3d 931 (2022). And our Supreme Court has held that this court may likewise consider certain *Doyle* violations for the first time on appeal, including statements made during voir dire, opening remarks, or closing arguments. *King*, 288 Kan. at 349. But when, as here, the *Doyle* challenge relates to an evidentiary issue—e.g., a prosecutor's line of questioning on direct or cross-examination—the appellate claim must be dismissed as unpreserved if the defendant failed to make a timely and specific objection at trial. *King*, 288 Kan. at 349 (holding *Doyle* violation during prosecutor's questioning of a witness cannot be raised on direct appeal absent a contemporaneous objection); *State v. Applebee*, No. 120,985, 2020 WL 1223408, at *4 (Kan. App. 2020) (unpublished opinion) (applying K.S.A. 60-404 and *King* in dismissing unpreserved prosecutorial error, *Doyle* claim).

In *State v. George*, 311 Kan. 693, 701-04, 466 P.3d 469 (2020), our Supreme Court reviewed its holding in *King* to address the conflict between the rule allowing appellate review of unpreserved claims of prosecutorial error and the rule precluding review of the type of *Doyle* violation that Fallis raises here. The *George* court highlighted the difference between a prosecutor's statements made directly to a jury—i.e., statements made during voir dire or opening or closing arguments—and lines of questioning made during the direct or cross-examination of witnesses. The *George* court explained that statements made directly to the jury are reviewable for prosecutorial error, so these claims may be considered for the first time on appeal. But when an appellant claims a *Doyle* violation occurred during a prosecutor's direct or cross-examination of a witness, this raises a purely evidentiary issue. *George*, 311 Kan. at 702-04. And appellate review

8

of an allegedly erroneous admission of evidence should be granted only if the defendant properly objected to the evidence in the district court. 311 Kan. at 704; see K.S.A. 60-404.

Fallis challenges the prosecutor's line of questioning during Delgadillo's direct examination and thus raises an evidentiary issue. See *George*, 311 Kan. at 704 (Regardless of the appellant's characterization of the issue, this is "not a question of prosecutorial error."). Because Fallis did not object to the line of questioning in the district court, we cannot grant his request to overturn his conviction based on this alleged error. See K.S.A. 60-404. Additionally, our Supreme Court has cautioned our appellate courts that by considering similar unpreserved claims "'to serve the ends of justice or to prevent the denial of [a defendant's] right to a fair trial, these and other caselaw exceptions would soon swallow the general statutory rule'" under K.S.A. 60-404. *State v. Randolph*, 297 Kan. 320, 335, 301 P.3d 300 (2013) (citing *State v. Richmond*, 289 Kan. 419, 429-30, 212 P.3d 165 [2009]). We thus dismiss Fallis' claim as unpreserved.

We thus do not reach the State's arguments that *Doyle* does not apply because Fallis did not receive *Miranda* warnings, see *State v. Tully*, 293 Kan. 176, 189-90, 262 P.3d 314 (2011), that Fallis was not in custody when seated in the patrol car, or that any error was harmless.

*Did the District Court Err by Failing to Exclude Testimony Commenting on Fallis' Credibility?*

Next, Fallis challenges another portion of Delgadillo's testimony as inadmissible— that Delgadillo did not believe Fallis' statement that he had consumed no alcohol, because he could smell alcohol on him. Fallis claims that this testimony improperly commented on his truthfulness and the district court improperly failed to strike it and failed to admonish the jury not to consider it.

As above, the State correctly contends that Fallis failed to preserve this issue for appellate review, as K.S.A. 60-404 requires a contemporaneous and specific objection to this evidence, yet Fallis made none. And our Supreme Court has shown no indication that our appellate courts should deviate from the contemporaneous objection requirement. To the contrary, our Supreme Court has consistently refused to allow the evidentiary errors rule to be circumvented by general preservation exceptions.

> "*King* stressed the importance of the legislative mandate in K.S.A. 60-404, which it found 'dictates that evidentiary errors shall not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error *at trial*.' 288 Kan. at 349. Moreover, *King* should have given fair warning to Solis' defense counsel when it stated unequivocally: 'From today forward, in accordance with the plain language of K.S.A. 60-404, evidentiary claims . . . must be preserved by way of a *contemporaneous objection* for those claims to be reviewed on appeal.' 288 Kan. at 349." *State v. Solis*, 305 Kan. 55, 62, 378 P.3d 532 (2016).

Based on *King*, *Solis*, and similar cases, we find this evidentiary issue unpreserved. See *Randolph*, 297 Kan. at 335 (courts cannot allow caselaw exceptions to swallow general statutory rule).

We thus do not reach the State's argument that Delgadillo's testimony and the district court's failure to admonish the jury not to consider it was harmless error under K.S.A. 60-261. See *State v. Lowery*, 308 Kan. 1183, 1235-36, 427 P.3d 865 (2018).

Appeal dismissed.