No. 95,088

STATE OF KANSAS, *Appellee*, v. WILLIAM BRADLEY KING, *Appellant*.

(204 P.3d 585)

334

Opinion filed March 27, 2009.

*Korey A. Kaul*, of Kansas Appellate Defender Office, argued the cause, and *Heather Cessna*, of the same office, was with him on the briefs for appellant.

*Brian P. Duncan*, assistant county attorney, argued the cause, and *Steve Stockard*, assistant county attorney, *John Gutierrez*, county attorney, *Paul Morrison*, attorney general, and *Phill Kline*, former attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

DAVIS, J.: William Bradley King was convicted of rape and aggravated criminal sodomy. During the trial, the prosecutor asked King about his continued silence after receiving *Miranda* warnings. King did not object to these questions and attempts to raise the alleged violation of *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976), on appeal based upon a claim of prosecutorial misconduct. The Court of Appeals held that in the absence of a contemporaneous objection under K.S.A. 60-404, King's *Doyle* claim was not preserved for review. *State v. King*, No. 95,088, unpublished opinion filed July 13, 2007. We granted King's petition for review on this issue and on a question involving the requirements for ordering restitution pursuant to K.S.A. 21-4603d(b)(1).

In granting King's review on the *Doyle* issue, we requested and the parties filed supplemental briefing on the following two questions:

"(1) Whether the contemporaneous objection rule, which has been applied to bar consideration of alleged violations of the rule of *Doyle v. Ohio*, 426 U.S. 610 (1976), can be avoided when the alleged violation is subject to characterization as prosecutorial misconduct.

"(2) Whether prosecutorial misconduct analysis should distinguish between behavior involving admission or exclusion of evidence (*e.g.*, questioning of witnesses on topics covered by a previously granted motion in limine or on a defendant's invocation of his [or] her right to silence or right to counsel) and behavior involving a prosecutor's direct communication with members of the jury (*e.g.*, voir dire, opening statement, closing argument)." *State v. King*, Order of the Kansas Supreme Court (No. 95,088, issued November 14, 2007).

These questions were prompted by this court's previous recognition of a "potential conflict" between our prosecutorial misconduct analysis and K.S.A. 60-404 in the context of potential *Doyle* violations. See *State v. Hernandez*, 284 Kan. 74, 79, 159 P.3d 950 (2007). Today, we clarify that a contemporaneous objection under K.S.A. 60-404 must be lodged by a defendant at trial in order to preserve a *Doyle* issue for appellate review when the alleged error arises during a prosecutor's questioning of a witness.

FACTS

On May 3, 2003, L.E. and her aunt drove from Pittsburg, Kansas, to Joplin, Missouri, because L.E. had just broken up with her boyfriend. In Joplin, the two women spent time drinking at a bar until around 1 a.m. the following day; they then went to a local juice bar. There, L.E. met King, who agreed to drive her back to Pittsburg.

L.E. testified that on the way to Pittsburg, King stopped his truck on a deserted country road near Lamar, Missouri. L.E. explained that King removed L.E.'s clothing and engaged in sexual intercourse with her, although she repeatedly "[told] him no." L.E. stated that she did not physically resist King because she "was scared" because she "didn't know where to go" and "didn't know where [she] was." L.E. also testified that when they were finished having intercourse, King grabbed her by the hair and forced her to perform oral sex on him. L.E. testified to three incidents of attempted or completed intercourse and two incidents of forced oral sex.

According to L.E.'s testimony, after these incidents took place, King told her to put her clothes back on so he could take her home. She stated that King acted regretful and "kept apologizing for raping" her. L.E. also stated that King "told [her] that he had been in prison before and that he was not going back for nothing not even this."

After the truck crossed the state line into Kansas, L.E. testified that King "stopped and . . . said he was going to finish what he started." L.E.'s testimony at this point described a more violent repetition of the earlier sexual assaults in Missouri. According to L.E., King bit her lips and neck and pulled her hair while they had intercourse; he then forced her to perform oral sex on him outside the truck while he continued to hold her hair.

L.E. explained that King got in the truck and drove away when L.E. drew the attention of another vehicle on the road, and L.E. watched as King drove back toward Missouri. She then went to a nearby home, knocked on the door, and informed the residents that she had been raped. Roughly 4 hours passed between the time that King and L.E. left Joplin and the time that the resident of the house called 911 to report the incident.

L.E. was examined by a sexual assault nurse in Pittsburg; this examination showed bruises, reddened areas, or scratches on L.E.'s shoulder, arm, abdomen, thigh, and feet. The nurse noted that L.E. had a "copious amount of hair falling out" and that she had a bald spot.

Steven Weston, chief deputy of the Barton County, Missouri, sheriff's department, was dispatched to Pittsburg on the morning of May 4, 2003, because "there had been an offense . . . or attempt . . . in Missouri, and then also again in Kansas." Deputy Weston testified at trial that although he interviewed L.E., he "limited [his] questions just to what had occurred on the Missouri side of the border."

Deputy Weston took custody of L.E.'s clothing, which was tested at a crime lab in Joplin. The rape kit associated with L.E.'s case was tested in Missouri and Louisiana. The final results of these tests were obtained in May 2004. An analysis of the vaginal swab indicated DNA from both King and L.E.'s former boyfriend.

Deputy Weston then located King at his place of work. King indicated that he had been with L.E. on the night in question and agreed to come to the sheriff's department later to discuss the incident. Later that day, King voluntarily appeared at the Barton County sheriff's department, signed a waiver of his *Miranda* rights, and provided Deputy Weston with a handwritten statement. The deputy testified at trial that, in general, King's version of the events matched L.E.'s version "almost word for word with the exception of he left out any mention of any kind of sexual contact." The deputy noted that other than this exception, King provided "pretty much the same story" as L.E. King's written statement was admitted into evidence but was not made part of the record on appeal.

In his trial testimony, King stated that he offered L.E. a ride home from Joplin. Once in his truck they returned to the home of his parents—a farm near Lamar, Missouri, where King also lived— to obtain gas money. He testified that he and L.E. had consensual sexual intercourse in his vehicle a short distance from his parents' house.

King explained that after he retrieved the money from the house near Lamar, he continued driving toward Pittsburg. King stated that he told L.E. while they were driving that he did not have a girlfriend but would "get together and have sex" two or three times per week with the mother of his son. King testified that L.E. changed at this point, stating "[i]t was like Jekyll and Hyde. She [L.E.] said I used her for sex" and told King to pull the truck over so "she could get some air." According to King, this occurred just inside the Kansas state line.

King testified that L.E. remained "just kind of like Jekyll and Hyde," so he said "forget this and . . . left her there." King explained that he went to Pittsburg to put gasoline in his truck and then returned because he "kind of felt bad and . . . was going to pick her up." He did not find L.E., but he "knew she had her cell phone . . . so [he] just went home."

The jury convicted King of rape and aggravated criminal sodomy. The court sentenced him to 221 months' imprisonment for the rape conviction and 109 months' imprisonment for the sodomy conviction and ordered that the two sentences run concurrently.

The court also ordered King to pay restitution in the amount of $317 to L.E. and $1,210.07 to the Crime Victims Compensation Board.

King appealed, claiming reversible error in (1) the admission of prior crimes evidence without a limiting instruction; (2) prosecutorial misconduct; (3) cumulative error; (4) ordering him to pay restitution without making findings on the record regarding his ability to pay these amounts; (5) ordering him to reimburse the Board of Indigents' Defense Services (BIDS) for attorney fees without making findings on the record regarding his ability to pay; and (6) using his prior criminal convictions to enhance his criminal history score without submitting these to a jury. The Court of Appeals affirmed the defendant's convictions and sentence and remanded the case to the district court for a determination as to King's ability to pay BIDS fees in light of this court's decision in *State v. Robinson*, 281 Kan. 538, 548, 132 P.3d 934 (2006). King petitioned this court for review of all issues save the BIDS claim.

We granted review on the questions of prosecutorial misconduct and restitution and ordered supplemental briefing on the question of whether *Doyle* issues raised in the context of prosecutorial misconduct require a contemporaneous objection to be preserved for review. Additional facts necessary for resolution of these issues are set forth in this opinion.

(1) MAY A VIOLATION OF *DOYLE V. OHIO*, 426 U.S. 610, 49 L. ED. 2D 91, 96 S. CT. 2240 (1976), BE RAISED ON APPEAL THROUGH A CLAIM OF PROSECUTORIAL MISCONDUCT ABSENT A CONTEMPORANEOUS OBJECTION REQUIRED BY K.S.A. 60-404?

In *Doyle v. Ohio*, 426 U.S. 610, 619, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976), the United States Supreme Court held that a prosecutor's use of a defendant's postarrest silence to impeach that defendant's credibility violates the Fifth and Fourteenth Amendments to the United States Constitution. Shortly thereafter, this court adopted the *Doyle* rationale as the law of this state in *State v. Mims*, 220 Kan. 726, 730, 556 P.2d 387 (1976). King argues that the prosecutor violated his rights under these opinions by asking a series of impermissible questions during cross-examination of the

defendant at trial. We agree with the Court of Appeals and hold that because King failed to object to the prosecutor's questions at trial, the contemporaneous-objection rule of K.S.A. 60-404 forecloses our consideration of this issue for the first time on appeal.

Contrary to his written statement admitted into evidence, King testified at trial that he and L.E. did have sex during their encounter but insisted that the sex was consensual. King explained at trial that he "lied about" not having sex with L.E. in his earlier handwritten statement because he had been to prison before and did not want the police to harass him or to charge him for something he did not do. The prosecutor questioned King on cross-examination about his decision not to include the fact that he and L.E. had consensual sex in his original handwritten statement, when the following exchange took place:

"Q. [PROSECUTOR] . . . [b]ut you never told the officers in a handwritten statement that you had consensual sex with [L.E.]?
"A. [KING] No, ma'am.
"Q. To this day you still have never given a handwritten statement that says you had consensual sex with [L.E.]?
"A. Nobody asked me to again.
. . . .
"Q. Did you ever contact the police to give a handwritten statement ever about consensual sex?
"A. No. You're not supposed to if you have an attorney is what I'm told.
"Q. Wouldn't you want them to investigate further?
"A. That's why you tell your lawyer.
"Q. But you had no problems talking to the police when you were first accused of it; right?"

The defendant did not object to any of these questions at trial. Ordinarily, this lack of objection would bar appellate review of the prosecutor's questions. See *State v. Sanchez*, 282 Kan. 307, Syl. ¶ 1, 144 P.3d 718 (2006). On appeal, however, King claims that the prosecutor's questions during this exchange were impermissible comments on his postarrest silence in violation of *Doyle* and rose to the level of reversible prosecutorial misconduct. We have recently indicated that a defendant is not required to preserve claims of prosecutorial misconduct at trial by way of a contemporaneous objection—regardless of whether the alleged misconduct results

from a prosecutor's questions of a witness or a prosecutor's comments during closing argument. See *State v. Manning*, 270 Kan. 674, 697, 19 P.3d 84 (2001). In light of the facts of this case, which involve a prosecutor's questions and a defendant's answers to those questions at trial but no allegedly improper comments by that prosecutor during final argument, we now reexamine our decision in *Manning*.

The Court of Appeals found that King's failure to object to the prosecutor's questions at trial precluded the court from considering the issue on appeal. The Court of Appeals acknowledged the " 'potential conflict' " between the requirement that a defendant object to an alleged violation under *Doyle* to preserve that issue for appeal and claims of prosecutorial misconduct, for which no objection is necessary to preserve review. Slip op. at 15-16 (quoting *State v. Hernandez*, 284 Kan. 74, 159 P.3d 950 [2007]). The court concluded, however, that because the essence of King's claim involved the admission of evidence of his postarrest silence, the specific objection rule in K.S.A. 60-404 controlled. The Court of Appeals explained that "the gravamen of King's complaint is that a *Doyle* violation occurred during questioning of King that caused the erroneous admission of evidence." Slip op. at 18. Because King "[did] not complain of any *Doyle*-related prosecutorial misconduct as a result of the State's closing argument," the Court of Appeals held that the *Doyle* issue was not preserved for appeal. Slip op. at 18.

Our past decisions have recognized this conflict between the statutorily mandated contemporaneous-objection rule and the appellate standard for reviewing claims of prosecutorial misconduct. See *State v. Drayton*, 285 Kan. 689, 704-05, 175 P.3d 861 (2008); *Hernandez*, 284 Kan. at 79. We have declined to address that conflict until now, however, where the issue is squarely presented and the parties have been given the opportunity to fully brief and address the issue in oral argument. See *Drayton*, 285 Kan. at 705.

Discussion

The contemporaneous-objection rule is codified in K.S.A. 60-404 and provides that a timely and specific objection to evidence

at trial is required to preserve issues arising from that admission on appeal:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

This court considered the legislature's purpose for enacting the contemporaneous-objection rule in *Baker v. State*, 204 Kan. 607, 611, 464 P.2d 212 (1970), where we explained that the objection requirement is a "salutary procedural tool" that gives the district court "the opportunity to conduct the trial without us- ing . . . tainted evidence, and thus avoid possible reversal and a new trial." *Baker* also noted that the contemporaneous-objection requirement is "practically one of necessity if litigation is ever to be brought to an end." 204 Kan. at 611.

Although our previous opinions have recognized a tension be- tween K.S.A. 60-404 and our prosecutorial misconduct analysis in the context of *Doyle* questions, we have stressed the importance of the contemporaneous-objection requirement and the goals fur- thered thereby in a number of contexts. For example, in *State v. Fewell*, 286 Kan. 370, 389, 184 P.3d 903 (2008), this court recently found that the defendant's allegations that the prosecutor com- mitted reversible misconduct by commenting on the credibility of witnesses was truly an evidentiary question that was not preserved for appeal. *Fewell* explained:

"The purpose of the rule requiring a timely and specific objection is to give ' "the trial court the opportunity to conduct the trial without using the tainted evidence, and thus avoid possible reversal and a new trial." ' *State v. Moore*, 218 Kan. 450, 455, 543 P.2d 923 (1975). Fewell's claim of prosecutorial misconduct thwarts the purpose of the specific objection rule. This court has reiterated that ' "[t]he law of this state is realistic. Substance prevails over form." ' *Murray v. Modoc State Bank*, 181 Kan. 642, 647, 313 P.2d 304 (1957) (quoting *Travis v. Bishoff*, 143 Kan. 283, 285, 54 P.2d 955 [1936]). Fewell's prosecutorial misconduct claim is truly an evidentiary issue that has not been preserved for appellate re- view." 286 Kan. at 389.

Similarly, in *State v. White*, 284 Kan. 333, 344, 161 P.3d 208 (2007), the court held that the defendant's claim of prosecutorial

misconduct, which was based on allegations that the prosecutor impermissibly elicited a narrative response from a witness, "more accurately concerns the alleged erroneous admission of evidence rather than prosecutorial misconduct." The court in *White* recognized that the defendant's prosecutorial misconduct claim "is presumably framed in this fashion, however, because he failed to object at trial, a requirement for appellate review of evidentiary complaints but not prosecutorial misconduct." 284 Kan. at 344.

Our case law has long held that because *Doyle* involves the improper admission of impeachment evidence, *Doyle* questions are likewise subject to the contemporaneous-objection rule of K.S.A. 60-404. Parties must therefore raise a timely and specific objection to alleged *Doyle* violations in order to preserve those issues for appellate review. See *Sanchez*, 282 Kan. 307, Syl. ¶ 1 ("An appellate court does not review an alleged violation under *Doyle* . . . when the defendant fails to raise a timely objection with the trial court."); *State v. Haddock*, 257 Kan. 964, 973, 897 P.2d 152 (1995), *abrogated on other grounds by State v. James*, 276 Kan. 737, 79 P.3d 169 (2003) ("A timely and specific objection to the challenged question or comment is necessary to preserve a *Doyle* issue for appeal."); *State v. Fisher*, 222 Kan. 76, 84, 563 P.2d 1012 (1977) ("Because the appellant failed to make timely, specific objections to the testimony he now urges was erroneously admitted, the point is not properly before this court on appeal.").

*Fisher* involved an appeal from the defendant's conviction of indecent liberties with a child and aggravated sodomy. Among the issues raised on appeal, Fisher argued that his constitutional rights had been violated when the prosecutor elicited testimony from a police detective and during Fisher's cross-examination regarding his postarrest silence. This court noted that this testimony would normally raise a question under *Doyle* and *Mims*. But because Fisher failed to object to the testimony at trial, the court held that the issue was not preserved for appeal. The *Fisher* court explained:

"Failure to comply with the contemporaneous objection rule or some other state procedural requirement may bar a challenge, even upon federal constitutional grounds, to a conviction in a state court. *Henry v. Mississippi*, 379 U.S. 443, 13 L. Ed. 2d 408, 85 S. Ct. 564 [1965]. In *State v. Cameron & Bentley*, 216 Kan.

644, 533 P.2d 1255, we held that the accused had failed to preserve his claim of due process deprivation where no objection to the offending testimony was interposed at trial. Likewise, in *State v. Shepherd*, 213 Kan. 498, 516 P.2d 945, we said that the alleged error of eliciting testimony of the accused's post-arrest silence was not properly before this court where no objection was interposed at trial." *Fisher*, 222 Kan. at 83-84.

This court applied *Fisher* in *Haddock* and concluded the contemporaneous-objection rule precluded appellate review of the two alleged *Doyle* violations for lack of objection. See *Haddock*, 257 Kan. at 974. Haddock alleged that the prosecutor twice made comments that the defendant, who was charged with the murder of his wife, had never expressed any fear for his children's safety, which would have been the natural response had he been innocent. The court found Haddock "failed to preserve this issue for appeal because no objection was made to the statements on that ground during trial." 257 Kan. at 974 (citing *Fisher*, 222 Kan. at 83-84).

Our current case law does not, however, require a contemporaneous objection to preserve issues of prosecutorial misconduct for appellate review. See *State v. Swinney*, 280 Kan. 768, 779-80, 127 P.3d 261 (2006). The decision to review allegations of prosecutorial misconduct regardless of whether a specific objection has been raised is a fairly recent development in our case law. As recent as 1998, this court explained that "Kansas does not follow the 'plain error' rule; reversible error cannot be predicated upon prosecutorial misconduct during closing argument where no contemporaneous objection has been lodged." *State v. Heath*, 264 Kan. 557, Syl. ¶ 14, 957 P.2d 449 (1998).

In *State v. Sperry*, 267 Kan. 287, 308-09, 978 P.2d 933 (1999), this court broke with its previous case law and adopted the "plain error" rule for cases of prosecutorial misconduct where "the prosecutor's misconduct is so prejudicial or constitutes a constitutional violation which, if not corrected, will result in injustice or a miscarriage of justice." This newly adopted rule was explained more fully in *State v. McCorkendale*, 267 Kan. 263, 979 P.2d 1239 (1999), which was decided the same day as *Sperry*:

"Recently, this court set forth the standards to be followed on appeal in determining whether improper remarks made by a prosecutor during closing argument

provide a basis for reversal. [Citations omitted.] In those cases, we stated that Kansas does not ordinarily apply the plain error rule and reversible error normally cannot be predicated upon a complaint of misconduct by the prosecutor during closing argument where no contemporaneous objection is lodged. If the prosecutor's statements, however, rise to the level of violating a defendant's right to a fair trial and deny a defendant his or her Fourteenth Amendment right to due process, reversible error occurs *despite the lack of a contemporaneous objection.* [Citation omitted.] Where the appellate court, in examining a claimed error of prosecutorial misconduct, determines that the misconduct may rise to the level of violating a defendant's right to a fair trial, the claimed error will be considered. Thus, the plain error rule is recognized where the prosecutor's misconduct is so prejudicial or constitutes a constitutional violation that if not corrected will result in injustice or a miscarriage of justice. [Citation omitted.]" (Emphasis added.) *McCorkendale*, 267 Kan. at 278.

The *McCorkendale* court further explained:

"In cases where the issue of prosecutorial misconduct is preserved by objection at trial, and in cases where not so preserved but where the claimed error has been determined to implicate a defendant's right to a fair trial and, thus, rises to the level of a denial of the defendant's Fourteenth Amendment right to due process, the appellate standard of review is the same. [Citation omitted.]" 267 Kan. at 278.

Notably, *McCorkendale* limited its application of the plain-error rule to cases involving allegations of prosecutorial misconduct during closing argument. See 267 Kan. at 278. In *State v. Miller,* 268 Kan. 517, 997 P.2d 90 (2000), this court again distinguished between claims of prosecutorial misconduct pertaining to the State's questioning of witnesses and claims involving closing argument. The court dismissed the claims regarding the questioning because "the evidence admitted without objection falls under our contemporaneous objection rule." 268 Kan. at 524. The *Miller* court found that the claims as to the closing argument were without merit because the "improper arguments were not so gross and flagrant as to have prejudiced the jury against the accused and denied him a fair trial." 268 Kan. at 524; see also *State v. Hazley,* 28 Kan. App. 2d 664, 19 P.3d 800 (2001) (denying review of an alleged *Doyle* violation that occurred during the prosecutor's direct examination of a witness because no objection was raised to the testimony, but finding prosecutor's comments on this testimony during closing argument constituted prosecutorial misconduct).

Nevertheless, in *Manning*, which was decided about a year after *Miller*, this court held that the same plain-error rule applied when considering closing arguments "also applies when a prosecutor is cross-examining a defendant who has chosen to take the stand." 270 Kan. at 697. Applying this standard, the *Manning* court considered the defendant's claim that the prosecutor's questions of the defendant rose to the level of prosecutorial misconduct even though the defendant did not object to those questions at trial. The court ultimately concluded that although the prosecutor's questions were "wholly improper, . . . the improper questions did not prejudice the jury against the accused and deny him a fair trial." 270 Kan. at 702. The question in this case relating exclusively to the prosecutor's questioning of the defendant requires us to examine the prudence of these statements in *Manning*.

We acknowledge that questions asked by a prosecutor during trial may not constitute evidence but rather may take the form of information the prosecutor wishes to convey to the jury. Thus, such questions arguably should not be subject to the contemporaneous objection rule in K.S.A. 60-404. Yet separating questions and answers in the context of an alleged *Doyle* violation has proved to be vexing. We have repeatedly acknowledged the potential conflict between the contemporaneous-objection requirement in the evidentiary context and our prosecutorial misconduct analysis. See *Drayton*, 285 Kan. at 704-05; *Hernandez*, 284 Kan. at 79. This conflict appears to have been perpetuated by two factors: (1) the difficulty in distinguishing evidentiary issues from prosecutorial misconduct; and (2) courts' general willingness to analyze *Doyle* claims under whichever posture—evidentiary or prosecutorial misconduct—they are presented on appeal. We address each of these considerations in turn.

*Evidentiary Questions Versus Prosecutorial Misconduct*

The contemporaneous-objection requirement of K.S.A. 60-404 specifically applies to the admission or exclusion of evidence. *Miller*, 268 Kan. at 519-20. While a prosecutor's questions at trial may not be evidence, such questions call for an answer, and both the question and answer given become part of the evidentiary or pros-

ecutorial misconduct claim. All of this occurs in the questioning of a witness upon direct or cross-examination—traditionally viewed as evidentiary matters that a district court judge may admit or exclude. The conclusion of the Court of Appeals that "the gravamen of King's complaint is that a *Doyle* violation occurred during questioning of King that caused the erroneous admission of evidence" is a particularly apt description of what occurred in this case. *State v. King*, No. 95,088, unpublished opinion filed July 13, 2007, slip op. at 18.

When an alleged *Doyle* violation occurs at trial during a prosecutor's questioning of a witness and that witness' responses, the line between evidence and argument becomes blurred. Moreover, a prosecutor is permitted to ask leading questions during cross-examination. See *Fisher*, 222 Kan. at 81 (quoting Note, *The Supreme Court 1970 Term*, 85 Harv. L. Rev. 1, 195 [1971]). In these situations, it is the prosecutor's question that contains the information that the prosecutor wishes to convey to the jury, while the witness either affirms or denies the veracity of the question's content. See 81 Am. Jur. 2d, Witnesses § 716; see also *State v. Ward*, 10 Utah 2d 34, 37, 347 P.2d 865 (1959) (explaining that a leading question "in effect puts words in the witness's mouth so the testimony is really that of the questioner and not the witness").

Yet despite the apparent blurring of evidence and argument in some contexts, the United States Supreme Court has indicated that questions under *Doyle* are foreclosed from appellate review when a defendant fails to object to the offending question or testimony at trial. See *Greer v. Miller*, 483 U.S. 756, 765 n.5, 97 L. Ed. 2d 618, 107 S. Ct. 3102 (1987) (stating that particular comments by the prosecutor that allegedly violated *Doyle* were not before the Court on appeal because "defense counsel did not object to that portion of the prosecutor's argument on this ground"). Under this approach, a prosecutor's questions during the examination of a witness—even when these questions lead to a potential *Doyle* violation—fall under the evidentiary umbrella. Such an approach is consistent with this state's case law requiring a timely and specific objection in order to preserve evidentiary issues for appellate review. See, *e.g.*, *Sanchez*, 282 Kan. at 311.

Upon closer examination, we believe that it is problematic to review on appeal all alleged *Doyle* violations by way of prosecutorial misconduct claims when the defendant has not raised a specific objection to the relevant questions and answers at trial, as is required by K.S.A. 60-404. The current practice of reviewing such claims on appeal without trial objections renders the contemporaneous-objection rule meaningless in at least one evidentiary context and poses a threat that all trial problems—although ignored by defense counsel—may nevertheless be raised under the broad allegations of prosecutorial misconduct. See *Baker v. State*, 204 Kan. 607, 611, 464 P.2d 212 (1970) (stating that the contemporaneous-objection requirement is "practically one of necessity if litigation is ever to be brought to an end"). In recognition of this problem, the United States Supreme Court has stressed in the federal system that "[r]eviewing courts are not to use the plain-error doctrine to consider trial court errors not meriting appellate review absent timely objection—a practice which [the Court has] criticized as 'extravagant protection.' [Citations omitted.]" *United States v. Young*, 470 U.S. 1, 15-16, 84 L. Ed. 2d 1, 105 S. Ct. 1038 (1985).

K.S.A. 60-404 clearly states that a "verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed" on the basis of an evidentiary issue absent a timely and specific objection. As a court interpreting and applying statutes, we are bound to give effect to the legislature's intent if that intent can be ascertained. See *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007). While the legislature has created exceptions to the rule requiring objections to preserve an issue for appeal in some nonevidentiary contexts, the legislature did not establish such an exception to the mandate of K.S.A. 60-404. Compare K.S.A. 22-3414(3) (issues arising from jury instructions may be reviewed for clear error when no objection was raised at trial) with K.S.A. 60-404 (evidentiary questions "shall not" be the basis for reversal absent a timely and specific objection). Rather, the legislature's intent in enacting K.S.A. 60-404 is clear: a party must lodge a timely and specific objection to the admission or exclusion of evidence in order to preserve the evidentiary question for review.

We stress today the importance of this legislative mandate. K.S.A. 60-404 dictates that evidentiary errors shall not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error at trial. Although our past decisions may have relaxed the objection requirement in the evidentiary context, this practice not only has led to confusion as to the standards that should be applied on appeal, but also has de-emphasized the role of counsel at trial and has impaired the gate-keeping function of district courts in this state. See *Baker*, 204 Kan. at 611. More importantly, this practice of reviewing evidentiary questions when no objection has been lodged runs contrary to the legislature's clearly stated intent in K.S.A. 60-404.

We disapprove of our previous decisions that have granted appellate review of a prosecutor's questions and a witness' answers to those questions during trial without objection by way of a prosecutorial misconduct claim. From today forward, in accordance with the plain language of K.S.A. 60-404, evidentiary claims—including questions posed by a prosecutor and responses to those questions during trial—must be preserved by way of a contemporaneous objection for those claims to be reviewed on appeal.

This court will continue to review a prosecutor's comments to a jury during voir dire, opening statement, or closing argument which are not evidence on the basis of prosecutorial misconduct even when no objection was lodged at the trial level, although the presence or absence of an objection may figure into our analysis of the alleged misconduct. See *State v. Miller*, 284 Kan. 682, 719-20, 163 P.3d 267 (2007).

*Conclusion*

The alleged *Doyle* violation in this case occurred during the prosecutor's cross-examination of King—an exchange that falls squarely within the period when the prosecution and defense offer evidence at trial. See K.S.A. 22-3414 (order of trial). Contrary to King's characterization of his claim on appeal, he has presented an evidentiary question that may only be reviewed upon compliance with the contemporaneous-objection rule. K.S.A. 60-404.

There was no objection to the prosecutor's allegedly improper questions at trial. We conclude that the Court of Appeals therefore correctly determined the issue was not preserved for appellate review.

## Additional Claim of Prosecutorial Misconduct

In addition to his claim involving the propriety of the prosecutor's questions under *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976), King asserts that the prosecutor committed reversible misconduct during closing argument by implying that his trial testimony was untruthful. In his closing statement, defense counsel stated that there were "huge and glaring inconsistenc[ies]" in L.E.'s description of the night's events. The defense stated that "[L.E.]'s story grows over time. It gets better over time. She is more taken advantage of over time." Defense counsel later argued:

"I don't like to think that anybody ever tells me something that's not true, but it happens and people have motivations. . . . This is one of the biggest and most expensive cases of buyers remorse of all time, but who's going to end up being remorseful if you believe [L.E.]? Brad King."

In her rebuttal at the end of closing argument, the prosecutor made the following statements that King now claims constitute reversible misconduct:

"[Defense counsel] has stated that he believes the person who has the most incentive to be untruthful is [L.E.] and he's talked about the state's awesome power; and what we're doing to the defendant. The defendant is responsible for his own acts. I'm responsible for prosecuting. Who has the motive to be untruthful? It's not [L.E.]. Who has the criminal history? Convictions including falsehoods and dishonesty? It's not [L.E.]. The victim [L.E.] is not on trial. The victim [L.E.] has been consistent in what she's told you. The evidence [that] has been submitted to you is consistent with what she's told you. The person who has the motive to be untruthful is not [L.E.]."

King did not object to these statements at trial. On appeal, he claims that the prosecutor's comments during her rebuttal effectively called the defendant a liar—"if not done in so many words"—in violation of Kansas law.

The Court of Appeals rejected King's claim that the prosecutor's comments constituted misconduct. The court distinguished this case from those that had found instances of prosecutorial misconduct in that "[t]he prosecutor here suggested King had a *motive* to be untruthful. She did not offer her own personal opinion or belief that he was untruthful." Slip op. at 21. The court also noted that the issue regarding a motive to be untruthful was originally raised in defense counsel's closing arguments, wherein he claimed that L.E. had a motive to fabricate the story; thus, the defense had opened the door to the argument. Slip op. at 21. Finally, the court found that King actually testified during his direct examination that he had "lied" to the police during his handwritten statement and that the jury was instructed to disregard statements by counsel that were not supported by evidence. Slip op. at 21-22.

Our standard of review of a prosecutor's alleged misconduct during opening statement or closing argument involves a two-step analysis: (1) Did prosecutorial misconduct take place, and, if so, (2) does the prosecutorial misconduct rise to the level of plain error and thus require reversal? See *State v. Swinney*, 280 Kan. 768, 779-80, 127 P.3d 261 (2006).

Because "[i]t is the duty of the prosecutor in a criminal matter to see that the State's case is properly presented with earnestness and vigor and to use every legitimate means to bring about a just conviction," prosecutors are given wide latitude in arguing the cases before them. *State v. Ruff*, 252 Kan. 625, 634, 847 P.2d 1258 (1993). "Inherent in this wide latitude is the freedom to craft an argument that includes reasonable inferences based on the evidence." *State v. Pabst*, 268 Kan. 501, 507, 996 P.2d 321 (2000).

The "wide latitude" allowed prosecutors is not limitless, however. In particular, we have explained that while prosecutors may "draw reasonable inferences from the evidence" during closing argument, prosecutors "may not comment upon facts outside the evidence. [Citation omitted.]" *State v. McCray*, 267 Kan. 339, 351, 979 P.2d 134 (1999). When a prosecutor argues facts that are not in evidence, this court has consistently found that "the first prong of the prosecutorial misconduct test is met." *State v. Ly*, 277 Kan. 386, Syl. ¶ 4, 85 P.3d 1200, *cert. denied* 541 U.S. 1090 (2004).

In *Pabst*, we concluded that the prosecutor committed misconduct by calling the defendant or defense counsel liars at least 11 times during the course of closing argument. 268 Kan. at 507. According to *Pabst*, by making the conclusory (and derogatory) statements, the prosecutor was arguing his own viewpoint regarding the credibility of the defendant and other witnesses. The court explained:

"Pabst's credibility was crucial to the case. The prosecutor placed before the jury unsworn testimony which it should not have considered: his personal opinion on Pabst's credibility and the credibility of the State's evidence. Stating facts not in evidence is clearly improper. [Citation omitted.] Accusing Pabst of lying goes far beyond the traditional wide latitude afforded to prosecutors in closing argument. [Citation omitted.] Inherent in this wide latitude is the freedom to craft an argument that includes reasonable inferences based on the evidence. When a case develops that turns on which of two conflicting stories is true, it may be reasonable to argue, based on evidence, that certain testimony is not believable. However, the ultimate conclusion as to any witness' veracity rests solely with the jury." 268 Kan. at 507.

Since deciding *Pabst*, this court has clarified that while "[i]t is improper for a prosecutor to accuse a defendant of lying," a prosecutor still has "freedom . . . to craft an argument that includes reasonable inferences based on the evidence and that when a case turns on which of two conflicting stories is true, certain testimony is not believable." *State v. Davis*, 275 Kan. 107, 121, 61 P.3d 701 (2003). In *Davis*, the defendant argued that the prosecutor committed reversible misconduct by making several statements that the alleged victim's story should be believed in light of the evidence presented at trial. This court found that the prosecutor's comments during closing argument were not error because the prosecutor "did not blatantly call Davis a liar" but instead "stated reasonable inferences based upon the evidence," which involved two conflicting versions of the events. 275 Kan. at 122. The *Davis* court further emphasized that the "prosecutor's comments . . . did not [constitute] vouching for [the victim's] credibility." 275 Kan. at 122-23. The court concluded that the prosecutor's comments were "within the latitude afforded the prosecutor during closing argument." 275 Kan. at 123.

Similarly, in *State v. Jones*, 273 Kan. 756, 783, 47 P.3d 783, *cert. denied* 537 U.S. 980 (2002), the court explained that "[e]xposing the bias or motive for testifying is a proper subject for cross-examination, [citation omitted] and, by extension, the prosecutor is free to argue this point to the jury."

In this case, as in *Davis*, the prosecutor never explicitly called the defendant a liar or stated that the defendant had lied. Instead, the prosecutor argued—as an apparent response to the arguments of defense counsel—that L.E. was not the person who had a "motive" to be untruthful. Although the natural implication of this statement is that King *did* have a motive to conceal the truth, this argument was fair and based on the evidence. The jury in this case was called on to consider two divergent accounts of the events that took place on the night in question: that of L.E. and that of King. It was not improper for the prosecutor to argue that L.E. did not have a motive to be untruthful—this statement does not constitute vouching for the witness' credibility. This conclusion is strengthened by the fact that defense counsel also made comments during closing argument as to whether L.E. or King had a greater motivation to fabricate a story.

The prosecutor's comments during closing argument regarding the witness' motivations to be untruthful were not improper.

(2) Is a district court required to make findings on the record regarding a defendant's ability to pay before ordering restitution under K.S.A. 21-4603d(b)(1)?

We also granted review on the question of whether the district court erred when it ordered King to pay restitution in the amount of $317 to L.E. and $1,210.07 to the Crime Victims Compensation Board (CVCB) without first making findings on the record regarding his ability to pay. King did not raise this issue before the district court.

Issues not raised before the district court are deemed abandoned and cannot be raised on appeal. *State v. Shopteese*, 283 Kan. 331, 339, 153 P.3d 1208 (2007). We have recognized a limited exception to this rule where consideration of an issue is necessary to serve

the ends of justice or to prevent the denial of fundamental rights. *State v. Adams*, 283 Kan. 365, 367, 153 P.3d 512 (2007).

King claims that the restitution issue "can be considered by this Court for the first time on appeal because institution of a restitution order without proper Due Process of Law affects [the defendant's] fundamental rights." King does not explain, however, how the district court's lack of findings on the record regarding King's ability to pay the restitution costs violated his right to due process. In any case, any claim that the defendant's due process rights were violated in this case is without merit, as he was present and represented by counsel at the hearing where restitution was discussed and determined. See *State v. Robinson*, 281 Kan. 538, 548, 132 P.3d 934 (2006) ("The basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner."). Furthermore, the Court of Appeals correctly found that King's argument regarding restitution is not a due process claim but rather is a question of statutory interpretation. See *King*, slip op. at 23.

Despite the fact that King's restitution argument was not properly preserved for appeal, we granted review of this issue to underscore the distinction between the requirements for restitution under K.S.A. 21-4603d(b)(1) and those for reimbursement of fees to the Board of Indigents' Defense Services (BIDS) under K.S.A. 22-4513 in light of our recent decision in *Robinson*, 281 Kan. 538. We clarify that the district court was not required to make findings on the record regarding the defendant's ability to pay restitution before it could impose an order of restitution in this case.

Standard of Review

In *State v. Dexter*, 276 Kan. 909, 912, 80 P.3d 1125 (2003), we explained that an appellate court's review of a restitution plan under K.S.A. 21-4603d(b)(1) "can involve three standards of review." Questions concerning the "amount of restitution and the manner in which it is made to the aggrieved party" are reviewed under an abuse of discretion standard. 276 Kan. at 912. A district court's factual findings relating to the causal link between the crime committed and the victim's loss will be affirmed if those findings are

supported by substantial competent evidence. Finally, appellate courts have unlimited review over legal questions involving the interpretation of the underlying statutes. 276 Kan. at 913.

As the Court of Appeals found when it considered King's restitution argument in this case, the defendant's claim turns on the interpretation of K.S.A. 21-4603d(b)(1). See *King*, slip op. at 23. Thus, our review is unlimited.

Analysis

A district court's ability to impose a restitution plan during sentencing is governed by K.S.A. 21-4603d(b)(1), which provides in relevant part:

"[T]he court shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable. . . . If the court finds a plan of restitution unworkable, the court shall state on the record in detail the reasons therefor."

We considered the question of whether a district court must take a defendant's ability to pay restitution into consideration before issuing an order under K.S.A. 21-4603d(b)(1) in *State v. Goeller*, 276 Kan. 578, 77 P.3d 1272 (2003). In that case, the defendant pled guilty to felony possession of methamphetamine and marijuana and pled no contest to misdemeanor driving under the influence. In addition to imposing a prison sentence, the district court issued an order that the defendant pay $1,000 per month during the defendant's 12-month postrelease supervision to the victim of the head-on crash that resulted from the defendant's DUI. The defendant objected to the district court's restitution plan as unworkable in light of the fact that he would be in prison before he was required to pay the restitution and would not be able to work during that time.

On appeal, this court affirmed the district court's restitution order, explaining at length:

"Goeller renews his district court objection that the amount of $1,000 per month is unworkable. He seeks reversal and a remand with instructions that the district judge enter a new order that takes his inability to pay into account.

"The plain language of K.S.A. 2002 Supp. 21-4603d(b)(1) [which is identical to the language of the current statute] requires restitution 'unless' the court finds a plan of restitution unworkable. Moreover, '[i]f the court finds a plan of restitution unworkable, the court shall state on the record in detail the reasons therefor.'

*"The design of this provision makes clear that restitution is the rule and a finding that restitution is unworkable the exception. It also leads us to conclude that it is a defendant's burden to come forward with evidence of his or her inability to pay.*

"In this case, Goeller presented no evidence of his inability to pay, and his own and his counsel's statements about his former and likely future employment are adequate to uphold the district judge's choice of amount under our abuse of discretion standard of review." (Emphasis added.) 276 Kan. at 583.

As *Goeller* indicated, the plain language of K.S.A. 21-4603d(b)(1)—which is identical to the language of K.S.A. 2002 Supp. 21-4603d(b)(1) (the statute discussed in *Goeller*)—states that a district court "shall" order restitution "unless the court finds compelling circumstances which would render a plan of restitution unworkable." See 276 Kan. at 580. Under the statute, "restitution is the rule and a finding that restitution is unworkable the exception." 276 Kan. at 583. Furthermore, this language makes it clear that the burden is on the defendant to demonstrate that a particular restitution plan is unworkable.

In this case, King did not raise the argument of unworkability before the district court *at all*. Not only would this lack of objection fail to preserve the issue for appellate review in the normal case, but it also fails to meet his burden of proving unworkability. Thus, the district court did not abuse its discretion when it ordered the restitution in this case.

In his argument on appeal, King still does not articulate why the restitution plan imposed by the district court is unworkable. Instead, he argues that *the district court* was under an independent obligation to make findings on the record regarding the plan's workability, and the failure to make such findings constituted an abuse of discretion. In support of this argument, King cites *Robinson*, where this court held that a district court must make findings on the record regarding a defendant's ability to pay before ordering the defendant to reimburse fees incurred by BIDS.

*Robinson* involved the interpretation of K.S.A. 22-4513, which governs the assessment of BIDS fees against a defendant in a crim-

inal case. Subsection (b) of that statute states that "[i]n determining the amount and method of payment of such sum, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose." K.S.A. 22-4513(b). Considering this provision, the *Robinson* court explained:

"The language is mandatory; the legislature stated unequivocally that this 'shall' occur, in the same way that it stated unequivocally that the BIDS fees 'shall' be taxed against the defendant. Compare K.S.A. 2005 Supp. 22-4513(a), (b). The language is in no way conditional. There is no indication that the defendant must first request that the sentencing court consider his or her financial circumstances or that the defendant must first object to the proposed BIDS fees to draw the sentencing court's attention to those circumstances." 281 Kan. at 543-44.

The court held, based on "the clear and unambiguous wording of the statute at issue," that "the sentencing court, at the time of initial assessment, must consider the financial resources of the defendant and the nature of the burden that payment will impose *explicitly*, stating on the record how those factors have been weighed in the court's decision." 281 Kan. at 544, 546.

King argues that the court's rationale in *Robinson* should be applied to the restitution statute in this case and that the court should similarly require that the district court make findings on the record regarding a defendant's ability to pay restitution before issuing an order under K.S.A. 21-4603d(b)(1). The problem with this argument, however, is that the court's holding in *Robinson* was based on the plain language of the statute at issue in that case, K.S.A. 22-4513, which specifically requires a district court to take into consideration "the financial resources of the defendant and the nature of the burden that payment of such sum will impose" before assessing BIDS fees against him or her. K.S.A. 22-4513(b). The restitution statute at issue in this case, K.S.A. 21-4603d(b)(1), contains no such language. In fact, the plain language of K.S.A. 21-4603d(b)(1) states that a district court "shall" order restitution "unless the court finds compelling circumstances which would render a plan of restitution unworkable."

King also argues that this court should follow the example of the Tenth Circuit in *United States v. Kunzman*, 54 F.3d 1522, 1532

(10th Cir. 1995), which interpreted a federal restitution statute, 18 U.S.C. § 3664(a), as requiring that there be sufficient information in the record to demonstrate a defendant's ability to pay the restitution ordered. The federal statute cited is similar to K.S.A. 22-4513(b) in that it required a presentence investigation report to consider "information relating to the economic circumstances of each defendant." 18 U.S.C. § 3664(a); see *Kunzman*, 54 F.3d at 1532. Again, the Kansas restitution statute contains no such requirement.

This court held in *Goeller* that the language and structure of K.S.A. 21-4603d(b)(1) "makes clear that restitution is the rule and a finding that restitution is unworkable the exception" and that "it is a defendant's burden to come forward with evidence of his or her inability to pay." 276 Kan. at 583. Because King presented no evidence regarding his ability to pay the restitution, he did not meet his burden in this case, and the district court did not err in ordering him to pay restitution to L.E. and to the CVCB.

The decision of the Court of Appeals affirming the defendant's convictions and sentence is affirmed. In accordance with the Court of Appeals' opinion, the case is remanded to the district court for a determination on the record regarding the defendant's ability to pay BIDS fees in accordance with this court's decision in *Robinson*.