IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,556

STATE OF KANSAS,
*Appellee*,

v.

JOSE BENJAMIN SOLIS,
*Appellant*.

SYLLABUS BY THE COURT

1.

K.S.A. 60-404 provides that a person's conviction shall not be reversed based upon the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection. The Kansas Supreme Court has interpreted K.S.A. 60-404 to require a defendant to contemporaneously object at trial to the admission of challenged evidence, notwithstanding a pretrial ruling by the court that the evidence is admissible.

2.

Even where a defendant's challenge to the admission of evidence implicates a constitutional violation, the failure to contemporaneously object to the admission of evidence at trial will generally preclude appellate review of the evidentiary claim.

3.

To avoid error when admitting evidence of prior crimes or civil wrongs under K.S.A. 60-455, in cases where propensity evidence is prohibited, the district judge must give a limiting instruction informing the jury of the specific purpose for admission.

1

4.

Where the issue is raised for the first time on appeal, the failure to give a legally and factually appropriate instruction will result in reversal only if the failure was clearly erroneous, *i.e.*, only if the appellant firmly convinces the reviewing court that the jury would have reached a different result without the error.

5.

Pursuant to K.S.A. 2015 Supp. 21-5103(d), the recodified provisions of criminal procedure enacted in 2010 have no application to crimes committed prior to July 1, 2011. Consequently, the provisions of K.S.A. 2015 Supp. 21-5202(c)—suggesting that proof of intentional conduct suffices to prove reckless conduct—does not apply to a crime committed in 2006.

6.

A jury instruction stating that the jury should find the defendant guilty if it has no reasonable doubt as to the truth of *any* of the claims required to be proved by the State is not erroneous, albeit the preferred language of the test is whether the jury has no reasonable doubt as to the truth of *each* of the claims required to be proved by the State.

7.

Appellate review of a cumulative error claim involves a de novo review of the record to determine whether, under the totality of the circumstances, the combined effect of the errors substantially prejudiced the defendant and denied the defendant a fair trial.

Appeal from Johnson District Court; PETER V. RUDDICK, judge. Opinion filed September 9, 2016. Affirmed.

2

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Steven J. Obermeier*, senior deputy district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Jose Benjamin Solis directly appeals his first-degree premeditated murder conviction emanating from the strangulation death of his former girlfriend. He raises issues about the State's use of evidence of prior incidences of domestic battery, about the exclusion and inclusion of certain jury instructions, and about the cumulative effect of the trial errors. Finding no reversible error, we affirm.

FACTUAL AND PROCEDURAL OVERVIEW

Solis met Natasha Crump at Job Corps in Manhattan, and a live-together relationship ensued that resulted in the birth of a child, Alizaia. The family moved to the Johnson County area, and the relationship became volatile and violent. In March 2006, Solis was charged with domestic battery for an incident in which he tried to throw Crump and Alizaia out of the apartment; he was on probation at the time of Crump's death.

Additionally, Crump's coworkers witnessed arguments between her and Solis, together with disruptive, harassing behavior by Solis. A male coworker pretended he was gay so that he could socialize with Crump without Solis becoming violently jealous. Crump's boss would sometimes give her a ride home but would drop her off at the entrance to the apartment complex parking lot to avoid being observed by Solis. In August 2006, Solis was banned from the restaurant and surrounding property where Crump worked because of repeated disruptive incidents in which Solis came to the

restaurant to yell and argue with Crump. After being banned, Solis would pace back and forth at the gas station across the street while Crump was at work. In September 2006, during Olathe's Old Settler's Days, Crump and several coworkers were leaving the restaurant after a late shift when Solis and Crump began screaming at each other. Coworkers intervened, and Solis left. Several times, Crump's boss and sister saw bruises on Crump's arms; Crump attributed these injuries to Solis.

Shortly before she died, Crump moved into her own apartment in Ottawa. But when Crump's car became inoperable, she stayed at Solis' apartment because it was close to her work. She told people she felt safe at Solis' apartment because Alizaia was there, also. Just before Crump died, she had gone on a date with a man with whom she seemed interested.

On Friday night, December 22, 2006, Crump went Christmas shopping with her sister and male coworker to buy Christmas presents for Alizaia. The male coworker had given Crump a Christmas card earlier that day. After shopping and a late meal, the male coworker dropped Crump off at Solis' apartment with plans to pick her up the next morning for work. But the next morning, the coworker could not get anyone to answer the door at Solis' apartment, despite repeated attempts, so he went on to work without Crump.

Meanwhile, on that Friday evening, December 22, Solis left his work at Pizza Hut and began drinking with a friend, Frankie Lawson, at another apartment in Solis' complex that belonged to Lawson's mother. Solis, Lawson, and Lawson's uncle drank throughout the evening, and friends of Lawson stopped by the apartment for a time. Solis became intoxicated, but he and the uncle made a trip to Gardner, returning around 1 a.m.

Either late on December 22 or early on December 23, Crump was strangled to death in a bedroom at Solis' apartment. Medical personnel arriving around 11:30 a.m. on December 23 found Crump dead, face down on the bed. The coroner, Dr. Michael Handler, opined that Crump died of manual strangulation, as evidenced by the petechial hemorrhages on her face and neck and the large bruises on her neck and the back of her head. Additionally, the corpse had abrasions, cuts and scrapes, on the face and neck. Together, the marks were consistent with Crump being beaten or choked during a violent struggle. A sexual assault examination revealed evidence of sexual intercourse, and DNA test results implicated Solis.

Solis talked to Officer Cynethea Evans shortly after the police arrived at the apartment the morning of December 23, 2006. He said that he had last seen Crump about 11 p.m. the night before; then he and Alizaia had gone to sleep on the couch. When he awakened, he thought Crump had left for work. Unprompted, Solis told Officer Evans that he had locked the apartment door the night before but that it was unlocked when he awoke. Solis said Crump had slept in the apartment bedroom by herself; that Crump had locked the bedroom door; and that it was still locked when he woke up. Solis told police he called Crump's job and then her sister before forcing the still-locked bedroom door open and seeing her body and then calling 911. When Evans asked Solis if Crump abused drugs, Solis said he did not know. An autopsy found no drugs in Crump's system.

Solis further told Officer Evans that when he came home around 10 or 11 p.m. on December 22, he and Crump had argued about Christmas. He had fresh scratches on his arms, neck, and face, which he said Crump had caused. Solis said he did not hit Crump during the argument but that he left for a short time, returning around midnight. Alizaia was watching TV on the couch and Crump was in the bedroom, talking to someone, when Solis went to sleep on the couch.

5

Solis' version of his whereabouts on that Friday was contradicted by the trial testimony of Lawson and his mother. They said Solis was drinking at the mother's apartment for most of the evening, left at some point with Lawson's uncle to drive to Gardner, and returned around 1 a.m.

Fifteen to 20 minutes after first speaking with Officer Evans, Solis volunteered that he and Crump had sex the previous night. He also asked Officer Evans if drugs were involved in the death before making the unsolicited comment that he had previously kicked Crump out of the apartment because of drugs. Later that day, Solis told Lawson and his mother that he and Crump had sex before she died.

Detective Patrick Foster interviewed Solis twice. The first time was on the Saturday Crump's body was discovered but before the autopsy results were completed and before the death was officially ruled a homicide. The second interview was 1 day later, after the homicide ruling.

In the first interview, Solis told the detective that he and Crump had sex after the argument they had at around 10:10 p.m. on Friday. But according to the respective eyewitnesses, Crump was shopping at that time and Solis was drinking with friends and making a trip to Gardner.

Notably, the police found no signs of forced entry to the apartment. They did find Solis' fingerprints on Crump's cell phone and on the Christmas card and envelope given to Crump by her male coworker.

Solis' DNA was found on Crump's cell phone, in semen collected from within Crump, and in the fingernail scrapings. A mixture of Solis' and Crump's DNA was found in bloodstains on the shirt Solis was wearing when he first spoke to police. Solis' DNA

6

was in semen stains on Crump's underwear, undershirt, sweatpants, and work shirt. Crump's male coworker and her recent date were both excluded as possible donors of any of the biological material tested for DNA.

Solis first told police that he had received the scratches and cuts on his arms, face, and neck when he and Crump had argued over Christmas plans. Later, he told Lawson and Lawson's mother that the fight was sparked by a call from Lawson's mother, albeit the mother could not recall any such call and cell phone records did not reflect the call. Interestingly, cell phone records indicated that, on Saturday morning, when Solis said he was looking for Crump, he called her job and called her sisters, but he did not call Crump.

Solis was originally charged with first-degree murder and rape. The State later amended the complaint to omit the rape charge.

There were two jury trials. The jury could not reach a unanimous verdict in the first trial, in 2008. In 2010, a second jury trial produced a verdict of guilty to first-degree murder.

Before the first jury trial, the State filed a motion to admit evidence of prior wrongdoing by Solis pursuant to K.S.A. 60-455. Specifically, the State sought to introduce: (1) evidence of a prior domestic battery conviction from March 2006 in which Solis abused Crump and for which he was on probation at the time of Crump's death; and (2) testimony from those persons who witnessed arguments between Solis and Crump and saw bruises on Crump's arms attributed to Solis. During a pretrial hearing, Solis' counsel objected on the basis that the State was attempting to offer propensity evidence.

The district court ruled that evidence of the discordant relationship between Solis and Crump from December 2006 would be admitted but reserved any ruling on the other evidence pending the court's review of *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006).

The district court later issued an order: (1) excluding evidence of the March 2006 domestic battery conviction; (2) allowing relationship evidence from December 2006 as relevant to show motive and identity and to demonstrate the discordant nature of the relationship; and (3) declining to rule immediately on relationship evidence from between March and December 2006, instead directing the State to make a specific proffer before introducing the evidence so the court could "make the analysis required by K.S.A. 60-455 and *Gunby*." During the trial, the State did make proffers of the evidence before introducing it, and the judge allowed testimony by witnesses about bruises on Crump's arms and incriminating statements Crump made regarding Solis as relevant to motive and identity and to establish their discordant relationship. Before the second jury trial, the parties agreed that the evidentiary rulings from the first jury trial were still in effect; Solis did not object.

During the first jury trial Solis affirmatively waived inclusion of a jury instruction on the lesser included offense of second-degree murder. The State objected to the exclusion, with the prosecutor saying he believed the instruction was required by law and that it would amount to invited error if Solis were to "change his mind in six or eight months from now when he gets some smart Appellate Defender talking to him if he is convicted." The district court conducted a colloquy with Solis and ultimately allowed him to waive the inclusion of the jury instruction on the lesser included offense of second-degree murder. At the pretrial hearing before the second jury trial, Solis' counsel said, after doing additional research, he would not object to inclusion of the lesser included offense instruction on second-degree intentional murder, which the court gave. The

8

defense did not request and the district court did not give a lesser included offense instruction on second-degree reckless murder or any form of manslaughter.

The jury convicted Solis of the charged crime of first-degree murder, and he appeals.

PRESERVATION FOR APPEAL OF EVIDENTIARY CLAIMS

Solis first complains about the evidence of prior crimes or civil wrongs admitted at the second trial. As noted, before the second jury trial, the parties agreed that the evidentiary rulings from the first jury trial were still in effect. Pointedly, however, Solis did not seek to have his first trial objections treated as continuing objections for the second trial.

Solis now contends on appeal that the State violated the limine order from the first trial by failing to make a specific advance proffer to the trial judge of the 60-455 evidence at the second trial; that the evidence introduced was not relevant to any material fact that was in dispute; and that the probative value of the evidence was outweighed by its potential for undue prejudice. Before we can consider the merits of those claims, we must consider the State's assertion that we should not consider the issue because it was not properly preserved for appellate review.

*Issue Preservation*

Solis concedes that, at the second jury trial, the defense did not object to the admission of the evidence about which he now complains on appeal. Further, he acknowledges that K.S.A. 60-404 provides that his conviction shall not be reversed based upon the erroneous admission of evidence "unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of

9

objection." Nevertheless, he argues that this court should reach the issue for two reasons: (1) the plain language of K.S.A. 60-404 does not preclude review in this case because of Solis' pretrial objection; and (2) consideration of the issue is necessary to serve the ends of justice or to prevent the denial of fundamental rights. See *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010) (stating three recognized exceptions to the rule against considering constitutional issues for the first time on appeal).

*State v. King*, 288 Kan. 333, 204 P.3d 585 (2009), was decided before Solis' second jury trial. *King* stressed the importance of the legislative mandate in K.S.A. 60-404, which it found "dictates that evidentiary errors shall not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error *at trial*." (Emphasis added.) 288 Kan. at 349. Moreover, *King* should have given fair warning to Solis' defense counsel when it stated unequivocally: "From today forward, in accordance with the plain language of K.S.A. 60-404, evidentiary claims . . . must be preserved by way of a *contemporaneous objection* for those claims to be reviewed on appeal." (Emphasis added.) 288 Kan. at 349.

Solis counters with the argument that "the plain language of K.S.A. 60-404" to which *King* referred does not explicitly state that the clearly stated grounds for objection must be in the form of a *contemporaneous objection at trial*. Rather, the statutory requirement is that the objection be "timely interposed," which one could read to encompass making the argument at a contested pretrial hearing. *Cf. State v. Holman*, 295 Kan. 116, 153, 284 P.3d 251 (2012) (Johnson, J., concurring in part and dissenting in part) (plain language of statute does not justify "artificial, court-made preservation rule which requires a defendant to reassert an objection which has previously been ruled upon in favor of the State").

Nevertheless, this court has shown no indication that it intends to deviate from the requirement of a contemporaneous objection at trial in order to preserve an evidentiary issue for appellate review. See, *e.g.*, *State v. Richard*, 300 Kan. 715, 720-21, 333 P.3d 179 (2014) (pretrial objection must be renewed at trial); *State v. Bowen*, 299 Kan. 339, 351, 323 P.3d 853 (2014) ("party seeking appellate review of erroneously admitted evidence must lodge a contemporaneous objection"); *State v. Shadden*, 290 Kan. 803, 835, 235 P.3d 436 (2010) (contemporaneous objection must be made to all evidentiary claims to preserve the issue for appellate review).

Moreover, Solis' second reason that we should review the issue for the first time on appeal is similarly unavailing. We have specifically refused to allow the contemporaneous objection rule to be circumvented by the caselaw exception that is designed to serve the ends of justice or prevent a denial of a fundamental right. See *State v. Randolph*, 297 Kan. 320, 335, 301 P.3d 300 (2013) (cannot allow the caselaw exception to "'swallow the general statutory rule'").

Solis attempts to bolster his argument for the application of an exception to the preservation rule by characterizing the admission of propensity evidence as a due process violation. In a letter of additional authority, Solis cites to *State v. Goodson*, 281 Kan. 913, 135 P.3d 1116 (2006), in support of his argument that due process is implicated when K.S.A. 60-455 evidence is erroneously admitted. Granted, *Goodson* does not explicitly refute that proposition; but it does not adopt it either. Rather, the *Goodson* court opined that "the case law is unsettled regarding whether due process is implicated when there has been an erroneous admission of evidence of prior crimes or of bad character" and specifically noted that the United States Supreme Court in *Estelle v. McGuire*, 502 U.S. 62, 75 n.5, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991), had "expressly reserved the question of whether admission of propensity evidence violates the Due Process Clause." 281 Kan. at 927. Nevertheless, the *Goodson* court determined that it could simply

11

"assume but not determine that due process is implicated" because even under the constitutional harmless error test the defendant would not prevail in that case. 281 Kan. at 927.

Similarly, we discern that it is unnecessary for us to resolve the question of whether the statutory violation of erroneously admitting evidence under K.S.A. 60-455 also constitutes a due process violation in contravention of the Fifth and Fourteenth Amendments to the United States Constitution. Even the protection afforded by fundamental constitutional rights is "tempered by sensible control of the criminal trial process," which means that such fundamental rights are "subject to procedural rules and evidentiary rulings that serve legitimate interests." *State v. Carr*, 300 Kan. 1, 209, 331 P.3d 544 (2014), *rev'd on other grounds and remanded* 136 S. Ct. 633 (2016). In that vein, this court has indicated that the contemporaneous objection rule serves a legitimate interest in this state. See, *e.g.*, *State v. McCaslin*, 291 Kan. 697, Syl. ¶ 4, 245 P.3d 1030 (2011) ("The purpose of the contemporaneous objection rule is to avoid the use of tainted evidence and thereby avoid possible reversal and a new trial.").

Indeed, the *King* court—which articulated a less flexible rule that evidentiary claims must be preserved for appeal by way of a contemporaneous objection at trial— refused to consider for the first time on appeal an alleged constitutional violation of the defendant's right to remain silent. 288 Kan. at 339-40. Although addressing a different constitutional right, *King* implicated the same constitutional amendments upon which Solis attempts to rely here, *i.e.*, the Fifth and Fourteenth Amendments to the United States Constitution. Solis does not explain why his unpreserved constitutional challenge is distinguishable from the unpreserved constitutional challenge that *King* refused to consider. We discern no reason to treat the circumstances differently. Consequently, even if Solis' evidentiary claims implicate due process, his failure to object at trial precludes appellate review.

12

FAILURE TO GIVE A K.S.A. 60-455 LIMITING INSTRUCTION

Next, Solis asserts that, even if the evidence of his physical abuse of Crump was admissible for some material fact, it was not admissible to show his propensity to commit crimes. Therefore, Solis contends that the district court erred in failing to give the jury a limiting instruction that informed the jurors that it could not use the prior batteries as evidence of propensity.

*Standard of Review*

When error in the giving or failing to give a jury instruction is claimed, the court analyzes whether the jury instruction is legally and factually appropriate and, if so, whether the error is harmless. *State v. Williams*, 295 Kan. 506, Syl. ¶ 4, 516, 286 P.3d 195 (2012). But where the instruction error is raised for the first time on appeal, the failure to give a legally and factually appropriate instruction will result in reversal only if the failure was clearly erroneous. K.S.A. 2015 Supp. 22-3414(3); *State v. Breeden*, 297 Kan. 567, 581, 304 P.3d 660 (2013). To establish a clearly erroneous instruction error, the defendant must firmly convince the court the jury would have reached a different result without the error. *Williams*, 295 Kan. at 516.

*Analysis*

Without question, where propensity evidence is not allowed, the trial court should have given a limiting instruction. See *Gunby*, 282 Kan. 39, Syl. ¶ 3 ("In addition, to avoid error, the district judge must give a limiting instruction informing the jury of the specific purpose for admission."). If we were reviewing whether the State had met its burden of proving that the error was harmless under the appropriate test set forth in *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012), the call

13

could be much closer. But, here, the defendant has a high hurdle to clear. Solis has to convince us that the jury verdict would have been different if the jury had not heard that Solis caused bruising on Crump in the few months before her death. He has not done so.

The jury heard enough other evidence of Solis' unusual behavior toward Crump and the couple's discordant relationship to render the challenged testimony corroborative, rather than determinative. For instance, evidence of Solis' highly emotional confrontations with Crump at her place of employment, resulting in his banishment from the establishment, followed by his stalking Crump from the gas station across the street, would certainly imply that Solis had the capacity to get violent with Crump. Most importantly, Solis was the only other adult person known to be in the apartment when Crump died. In short, we are not convinced that the bruising evidence was a game-changer, and, consequently, we are not convinced that the failure to give a limiting instruction about that evidence was clearly erroneous.

### LESSER-INCLUDED OFFENSE INSTRUCTIONS

Before the first jury trial, Solis submitted proposed jury instructions on unintentional second-degree murder and involuntary manslaughter, but at the conclusion of testimony, he changed his mind and sought to waive the inclusion of any instructions on lesser degrees of murder. The district court stated that the evidence did not support an instruction on involuntary manslaughter but indicated that the court was required to give an instruction on intentional second-degree murder. After Solis assured the district court that Solis understood the gamble he was taking by waiving instructions on any lesser included offenses, the court gave the jury no lesser included offense instructions at the first jury trial. By the second jury trial, Solis' counsel informed the trial court that further legal research had convinced counsel that an instruction on intentional second-degree

14

murder as a lesser included offense was required by law and that Solis would not attempt to waive that instruction.

The district court instructed the jury on first-degree premeditated murder and the lesser included offense of intentional second-degree murder. Solis argues on appeal that the district court should have, *sua sponte*, given lesser included offense instructions on reckless second-degree murder and involuntary manslaughter. K.S.A. 21-3402; K.S.A. 21-3404.

*Standard of Review*

"For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward,* 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012).

Solis did not request the instructions that he now says should have been given. As indicated above, that preservation flaw makes the error reversible only if the defendant can firmly convince this court that the jury would have reached a different result without the error.

15

*Analysis*

Second-degree reckless murder and involuntary manslaughter are lesser included offenses of first-degree murder, and, therefore, those instructions would have been legally appropriate to give to the jury. *State v. Engelhardt*, 280 Kan. 113, 135, 119 P.3d 1148 (2005); see *State v. Cordray*, 277 Kan. 43, 52, 82 P.3d 503 (2004).

But one could certainly question whether the instructions were factually appropriate. See *State v. Brown*, 300 Kan. 565, 587-88, 331 P.3d 797 (2014) (legally appropriate lesser included instructions of second-degree reckless murder and involuntary manslaughter not factually appropriate where there is not evidence that would reasonably justify a conviction of the lesser offenses); *Engelhardt*, 280 Kan. at 136 (evidence insufficient in first-degree murder case to support lesser included instructions for unintentional second-degree murder, voluntary manslaughter, or involuntary manslaughter). To kill a person by manual strangulation, one must exert considerable pressure to the victim's throat for a prolonged period. That circumstance does not readily suggest an accidental or reckless killing. To the contrary, this court has considered strangulation as a factor in favor of finding that the killing was not only intentional, but also premeditated. See *State v. Lloyd*, 299 Kan. 620, 634, 325 P.3d 1122 (2014); *State v. Mireles*, 297 Kan. 339, 366, 301 P.3d 677 (2013); *State v. Appleby*, 289 Kan. 1017, 1060, 221 P.3d 525 (2009); *State v. Scott*, 271 Kan. 103, 108-09, 21 P.3d 516 (2001) (collecting cases).

Nevertheless, any debate over the factual appropriateness of lesser included offense instructions involving reckless or unintentional conduct would be an academic exercise. Here, we can reverse only if Solis can convince us that the jury would have reached a different verdict if it had been given the instructions on reckless second-degree murder and involuntary manslaughter. He cannot do so. The manner of killing, together

16

with the evidence of Solis' jealously, stalking, and confronting Crump, coupled with the jury's selection of premeditated first-degree murder over intentional second-degree murder, firmly convince us that the giving of the additional lesser included offense instructions based on reckless or unintentional conduct would not have changed the verdict. In other words, the failure of the trial court to *sua sponte* give lesser included instructions on reckless second-degree murder and involuntary manslaughter was not clearly erroneous.

Solis also advances the creative argument that K.S.A. 2015 Supp. 21-5202(c) mandates the inclusion of reckless lesser included offenses. That provision states:

> "Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged. If recklessness suffices to establish an element, that element also is established if a person acts knowingly or intentionally. If acting knowingly suffices to establish an element, that element also is established if a person acts intentionally." K.S.A. 2015 Supp. 21-5202(c).

Solis interprets this provision as meaning that lesser included offenses can no longer be factually distinguished from the charged crime based on the difference between intentional conduct and reckless conduct, because proof of intentional conduct constitutes proof of reckless conduct. In other words, if an instruction on an intentional conduct crime is factually appropriate, an instruction on its reckless counterpart would also be factually appropriate. This would be a matter of first impression, but we need not attempt to wrap our minds around that logical conundrum in this case because K.S.A. 2015 Supp. 21-5202(c) is simply not applicable here. That statute was enacted as part of the recodification of the criminal code in 2010. See L. 2010, ch. 136, sec. 13, July 1, 2011. The legislature specifically provided that the new code does not apply to Solis' 2006 crime, to-wit:

"*This code has no application to crimes committed prior to July 1, 2011*. A crime is committed prior to the effective date of the code if any of the essential elements of the crime as then defined occurred before that date. Prosecutions for prior crimes shall be governed, prosecuted and punished under the laws existing at the time such crimes were committed." (Emphasis added.) K.S.A. 2015 Supp. 21-5103(d).

In short, Solis cannot use K.S.A. 2015 Supp. 21-5202(c) to fashion his lesser included offense instruction claim.

INSTRUCTION ON REASONABLE DOUBT

Solis complains that the trial court gave the jury an outdated instruction on reasonable doubt. The instruction given read:

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you should find the defendant guilty." (Emphasis added.)

PIK Crim. 3d 52.02 (2010 Supp.) reads, in relevant part:

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of *each* of the claims required to be proved by the State, you should find the defendant guilty." (Emphasis added.)

18

Solis argues use of the word "any" instead of "each" in the last sentence of the instruction shifted the burden of proof to such an extent as to warrant reversal.

*Standard of Review*

As above, Solis did not object to the instruction at either trial, and appellate review is limited to whether the instruction was clearly erroneous. K.S.A. 2015 Supp. 22-3414(3). This court will review the entire record de novo to determine whether the instruction was legally and factually appropriate and then determine whether it is firmly convinced that the jury would have returned a different verdict but for the instruction. *Williams*, 295 Kan. 506, Syl. ¶ 4, 516.

*Analysis*

Solis, citing various grammatical and linguistic treatises, argues the outdated version of the PIK instruction can be read two ways, and the erroneous conclusion a jury could draw is that if it has no reasonable doubt as to a single claim the State must prove, then the jury should find the defendant guilty. In other words, the argument is that the instruction relieves the State of its burden to prove *all* of the claims set forth in the elements instruction.

This identical argument was rejected in *State v. Herbel*, 296 Kan. 1101, 1122-24, 299 P.3d 292 (2013) (approving and adopting the rationale of *State v. Beck*, 32 Kan. App. 2d 784, 787-88, 88 P.3d 1233, *rev. denied* 278 Kan. 847 [2004]). *Herbel* acknowledged that the instruction using "any" instead of "each" was not the preferred instruction but found that it was not a clear misstatement of law, so as to be legally inappropriate. 296 Kan. at 1124; see also *State v. Ortega*, 300 Kan. 761, 779, 335 P.3d 93 (2014).

Here, Solis urges this court to reconsider *Herbel*, believing that the *Herbel* court would have reached a different result if it had considered letters of additional authority submitted pursuant to Supreme Court Rule 6.09(b) (2012 Kan. Ct. R. Annot. 49) in that case. But after *Herbel*, this court has consistently ruled that, although the challenged jury instruction is not the best way to define reasonable doubt, it is not erroneous. *Ortega*, 300 Kan. at 779; *State v. Holt*, 300 Kan. 985, 1006-07, 336 P.3d 312 (2014) (collecting cases).

Where an instruction is not erroneous, it cannot be clearly erroneous. See *Williams*, 295 Kan. at 515 (to determine whether an instruction was clearly erroneous reviewing court must necessarily first determine whether instruction was erroneous). Consequently, Solis' clearly erroneous claim with regard to the reasonable doubt instruction must fail.

CUMULATIVE ERROR

Solis argues that the combined effect of the trial errors warrants reversal, even if each error is independently harmless. He contends that he was deprived of his constitutional right to a fair trial.

*Standard of Review*

Appellate review of a cumulative error claim involves a de novo review of the record to determine whether, under the totality of the circumstances, the combined effect of the errors substantially prejudiced the defendant and denied the defendant a fair trial. See *Holt*, 300 Kan. at 1007.

*Analysis*

A cumulative error claim must necessarily fail if the record fails to support any of the errors raised on appeal. *State v. Lewis*, 301 Kan. 349, 384, 344 P.3d 928 (2015). Likewise, we have held that a single error cannot constitute *cumulative* error. *State v. Williams*, 299 Kan. 509, 566, 324 P.3d 1078 (2014). Even if multiple errors are found, they may still be disregarded if the evidence against the defendant is overwhelming. *Holt*, 300 Kan. at 1007; but see *State v. Tully*, 293 Kan. 176, 205-07, 262 P.3d 314 (2011) (combined effect of three errors deprived defendant of fair trial when evidence was not overwhelming). If any of the errors are constitutional in nature, the cumulative effect must be harmless beyond a reasonable doubt. *State v. Santos-Vega*, 299 Kan. 11, 27-28, 321 P.3d 1 (2014).

Above, we found that the court erred in failing to give a limiting instruction on the evidence the State had identified as K.S.A. 60-455 prior crimes or civil wrongs evidence, albeit the omission was not clearly erroneous. Likewise, we found that the failure to give lesser included offense instructions on reckless second-degree murder and involuntary manslaughter was not clearly erroneous but did not state definitively whether the omission constituted error. Nevertheless, we are firmly convinced that, under the totality of the circumstances, the manner in which the district court instructed the jury did not affect the outcome of the trial. In other words, to the extent instruction errors occurred, they did not prejudice the defendant nor deprive him of a fair trial.

Affirmed.